Moncure, J.
The debt for which the decree in this case was rendered consists of two parts; first, a balance claimed to be due for personal property sold by Conway Whittle to Littleton Tazewell in March 1803; and secondly, a balance claimed to be due for *344 rent of a tract of land called Piney Grove, leased by said Whittle to said Tazewell from that time until the end of 1809.
First: As to the balance claimed on account of the sale of personal property. This debt was due by 1 , A: 1 . . , „ "i parol contract. The original cause ot action accrued in 1803 or 1804. The suit was brought in 1825. It is of course barred by the statute of limitations; if the appellant had a right to avail himself of that defense, and if the debt has not been taken out of the ojieration of the statute.
It is objected that the appellant had no right to avail himself of the statute ; not having relied on the same by plea or answer. It is certainly true, as a general rule, that this defense must be made by plea or answer: and the rule applies as well to a court of equity as a court of law. If this case comes under the rule, I think the defense was sufficiently made by answer. The same strictness of pleading is not required in equity as at law.' It is not common to plead the statute specially or formally in equity; but only to rely upon it, in general terms, in the answer. The only reason for requiring the defense to be made by plea or answer is that the plaintiff may have an opportunity, if he can, to take the case out of the operation of the statute. Any thing in an answer which will apprise the plaintiff that the defendant relies on the statute will be sufficient, if such facts be averred as are necessary to show that the statute is applicable. In this case the executor of Littleton Tazewell in his answer submits to the court, “ Whether, even should the statute of limitations not bar the claim, it may not be esteemed a stale account, especially as the same, if due at all, was so more than five years before the death of the testator.” This plainly shows that if the statute should be a bar to the claim, the respondent intended to rely upon it. And the facts necessary *345 to sustain the defense are here set forth. In this respect the case differs from that of Hudsons v. Hudson's adm’r, 6 Munf. 352. It is certainly an informal of pleading the statute : hut proceeded no douht from the fact that the plaintiff had alleged the debt to be due by specialty; to which of course the statute would not have applied. Again : the defendant Goode expressly and formally relies on the statute in his answer; and as he, in right of his deceased wife, is sole residuary legatee of Littleton Tazewell, his defense enures to the benefit of the executor. In Shewen v. Vanderhorst, 4 Cond. Eng. Ch. R. 458, a creditor applied, under the common decree in an administration suit, to prove a debt which was barred by lapse of time; and the executors refusing to interfere, the plaintiff a residuary legatee, insisted on setting up the objection of the statute : Held, that it was competent for the plaintiff or any other party interested in the fund to take advantage of the statute, notwithstanding the refusal of the executors. In this case the executor, instead of refusing, manifested his intention to rely on the statute if it should be applicable.
But I do not think this case comes under the general rule. The plaintiff averred in his bill that the debt was due by specialty; which was alleged to be lost. It afterwards appeared that the debt was not due by specialty, but by simple contract: or at least that was the presumption from the absence of any proof on the subject. Until then, it did not appear that the statute afforded a bar to the claim. The proper mode of making the defense, therefore, was by exception to the commissioner’s report of the claim ; which exception was accordingly taken.
The appellant then had a right to avail himself of the statute; and the next question is, Whether the debt has been taken out of its operation ? The counsel for the appellee contended that it has; 1st, by the *346 will, which charges the whole estate of the testator with e payment of his debts; and 2dly, by a new or acknowledgment, made by the personal representatives or one of them, within five years before the institution of the suit.
• . As to the charge created by the will. It raises no trust in regard to the personal estate; and is merely inoperative, so far as that is concerned. It cannot therefore prevent the statute from being a bar to a suit brought to obtain payment of a debt out of the personal estate. Jones v. Scott, 4 Cond. Eng. Ch. R. 413; S. C. 4 Clarke & Fin. 382; Brown’s adm’r v. Griffiths, 6 Munf. 450; Braxton v. Wood’s adm’r, 4 Gratt. 25. But the charge creates a trust in regard to the real estate. Formerly it was supposed that such a trust embraced all debts of the testator, whether barred or not by the statute at the time of his death. But since the decision of Burke v. Jones, 2 Ves. & Beame 275, it has been considered to be well settled that a debt barred at the time of the testator’s death, is not revived by such a charge, in regard to real any more than personal estate. The able judgment of Sir Thomas Plumer in that case, as Ch. Kent has said, is well founded upon principle and upon the authorities, and puts an end to the question. Roosevelt v. Mark, 6 John. Ch. R. 266. See the principles stated and the cases collected on this subject in 1 Rob. Pr. new ed. p. 566-571. “ The doctrine, then, (in the language of that writer,) is narrowed down to this, that where there is a devise of real estate for the payment of debts, there is, as to the proceeds of such real estate, a trust created (according to Lord Redesdale’s opinion) for those creditors whose debts, at the testator’s death, were not barred by the statute; and after that event the statute, does not so run as to affect the claim of those creditors upon these proceeds.” It is unnecessary to determine the construction and effect *347 of the provision on this subject in the Code, p. 592, § 9, as it does not apply to this case.
In Lewis' ex'or v. Bacon's legatee, 3 Hen. & Munf. 89, it was held that a debt barred at the time of the testator’s death was, to some extent, revived by such a trust. But that case was decided in 1808, before the decision of Burke v. Jones, and ought not to be considered as settling the law of this state in opposition to the sound doctrine of the latter case. It was decided by three judges, who differed among themselves and made a compromise decree; and was decided at a period when the statute was almost entirely frittered away by the course of adjudication here and elsewhere. A striking illustration of this is afforded in the opinion of Judge Roane, who says, “It has been established, (and if it has not it ought to be,) that an advertisement by a debtor notifying all those who have any just debts owing to them, that they may apply at such a place and get payment, is such an acknowledgment as will bring a debt out of the statute.” Id. 109. He was for considering the debt revived as to the personal as well as the real estate.
Then was the debt barred by the statute at the time of the testator’s death ? There is nothing in the record to show the precise period of his death; except the statement made by his executor and returned with Commissioner Green’s report, from which it appears that he died in November 1815; in which month also Ms will was admitted to probat. Regarding that as the period of his death, the debt in question was barred, in any view which can be taken as to the time when the cause of action accrued; whether it was in March 1804, when it is said the debt first became due, or July 26, 1809, the date of his letter to C. Whittle, or August 8, 1810, the date of the last credit given on account of the debt. But it was contended (and perhaps properly) that there is no sufficient evidence of *348 the period of his death, or that it happened within five years after the cause of action accrued. Concede this, still it does not help the objection to the bar of the statute. The appellant relies on the statute; which is certainly a bar, unless the claimant can show , something which will take the case out of its operation. The burden of doing this devolves on the latter. He seeks to do it by producing the will. But that is not enough ; as the will was admitted to probat more than five years after the cause of action accrued. He ought further to have proved, if he could, that the testator died within five years after the cause of action accrued. This he has not done, and therefore he has failed to repel the bar of the statute by means of the will.
As to any new promise or acknowledgment by the personal representatives, or either of them. The debt, as wTe have seen, was barred at the time of the testator’s death ; and if the counsel for the appellant was right in maintaining that a personal representative cannot revive such a debt, then there is an end of the question. But without expressing any opinion upon that point, and conceding, so far as this case is concerned, that such a debt may be revived by a personal representative, let us enquire whether this debt has been so revived.
The letters of W. Tazewell of the 24th of July 1816, and 30th of November 1819, are plainly insufficient, according to all the recent authorities, to revive the debt. Even if they were sufficient; more than five years elapsed between the date of the last, and the institution of the suit; so that the debt was then again barred, unless in the mean time revived by some other promise or acknowledgment. The only evidence of any such promise or acknowledgment is the fact admitted in the answer of W. Tazewell; that, in compliance with the request contained in his letter of *349 the 30th of November 1819, Whittle would furnish a statement of what appeared to be due from any doouments in his hands, “ a statement was furnished, no proof of its accuracy or any documents nied it, and none have been furnished to this day.” This fact, whether taken by itself, or in connection with the letters, cannot amount to such a promise or acknowledgment as will take the debt out of the statute. The only authority relied on to give it that effect, is Townes v. Birchett, 12 Leigh 173; decided by two judges in a court of three, and of course not a binding authority. The majority, Judges Tucker and Cabell, were of opinion that the rule, that “ an account current rendered by one party to another, received and held without complaint or objection, shall be deemed a stated account,” is not confined to accounts rendered by merchant to merchant of mutual dealings between them as merchants. The third judge, Allen, was of opinion that the rule is so confined. Whether it be so or not, it cannot apply to this case; in -which an account current is not rendered by one party to another, of transactions of which they are both cognizant ; but in which an account is rendered against the estate of a decedent to his personal representative, wholly ignorant of the nature or amount of the debt. A promise by the executor to pay the debt cannot be inferred from his receiving and holding the account without objection; and more especially, if the debt be barred by the statute. If an executor can revive a debt so barred, he can only do it by an express promise; or, at least, by such an express acknowledgment as plainly implies a promise to pay the debt. Indeed, in Tullock v. Dunn, 21 Eng. C. L. R. 478, Chief Justice Abbott said, “As against an executor, an acknowledgment merely is not sufficient; there must be an express promise.” See also 1 Rob. Pr. new ed. 575. But even if the statement rendered *350 could be considered as an account stated, and sufficient to revive the debt, it does not appear that it was within five years before the institution of the su^- -i*1 evei7 view of the case, therefore, the claim wkich arose from the sale of personal property, is barred by the statute. -
Secondly: As to the claim for rent. The complainant alleged in his bill that the land was leased by deed on the 24th of March 1803, to be held from that time until the end of 1810, at the rent of one hundred and sixty-six dollars and sixty-six and two-thirds cents for the remaining part of 1803, and three hundred and thirty-three dollars and thirty-three and one-third cents per year for the residue of the term; that it was agreed that the lessee should retain four hundred dollars for the purpose of making certain improvements on the land; and that the deed contained a covenant for the payment of the rent, but, by some accident or misfortune unknown to the complainant, had been lost: And he claimed the whole amount of the rent, subject only to a credit for the four hundred dollars. W. Tazewell in his answer admitted that the land was rented of C. Whittle by L. Tazewell; but at what time, for what period, or on what terms, he did not know, and called for the strictest proof. He denied “that L. Tazewell ever consented, for the sum of four hundred dollars, to improve the Piney Grove estate to the extent which he did improve it. For the plantation had been unoccupied for many years; the dwelling-house had been burnt down; only one negro-house was standing, and that in so old and shattered a condition that it was not worth repairing, and the fencing entirely rotten or removed. Instead of this state of things when the plantation was returned to C. Whittle, besides other valuable improvements, L. Tazewell had built on it at his cost, a good dwelling-house with two rooms on the floor, and a brick chimney at each *351 end, and a large well built barn, which together could not have been worth less than two thousand dollars.” He denied all knowledge of the deed of lease, and manded proof that it ever existed, and of its contents, The evidence shows that a deed of lease was executed, but does not show what were its contents. It shows that the annual rent was probably one hundred pounds, though Abrahams, the witness mainly relied on to sustain the claim, thinks the rent was ninety pounds. It further shows that the lease probably commenced in 1803, though Abrahams thinks it was in 1804; and that it determined at the end of 1809 instead of 1810, as alleged in the bill. There is no evidence of the loss of the lease, or of any search having been made for it. Abrahams, who proves its execution, thinks he last saw it in possession of C. Whittle, and advised L. Tazewell to take a copy; but does not know whether he did or not. There is no evidence that L. Tazewell agreed to make the improvements for four hundred dollars. On the contrary, Abrahams proves that the plantation was in a wretched condition, having little or no fencing around it, nor any building upon it except an old log house; that during the term he built a dwelling-house and smoke-house, and completed a dairy, and other workmen built a very substantial barn; and that under the agreement between C. Whittle and L. Tazewell, the cost of building all the said houses was to be deducted from the rent. His bill alone amounted to six hundred and ninety-six dollars and thirty-five cents; and included no charge for materials. It does not appear what was the cost of materials, nor what the cost of the barn and other improvements made upon the land. There is reason, however, for believing that the whole cost of improvements made by L. Tazewell under the agreement was equal, or nearly so, to the whole amount of the rent, and that at the termination of the lease he owed little *352 or nothing on account of rent. That this was the opinion of the parties, or at least of L. Tazewell, is manifest from the tenor of his letter to C. Whittle of July 26, 1809, in which he says, “I have experienced considerable uneasiness at not having been able to pay your claim against me for articles purchased at Piney Grove,” excuses himself for not having done so, and expresses a hope that he would be able to do so by the end of the year; but makes no allusion whatever to any debt on account of rent. Is it credible that he would not have made such an allusion if he had owed all the rents (except four hundred dollars for improvements) according to the pretension set up in this suit; or even if he had owed any material part of them ? He lived six years after the date of that letter, and C. Whittle survived him; and yet it does not appear, and is not pretended, that he ever admitted his liability, or that application was ever made to him for any thing, on account of rent. Nor was any account for rent ever rendered to him or his representatives until after W. Tazewell’s letter of November 30th, 1819. If C. Whittle intended to make any claim on account of rent, the circumstances required him to make it promptly, and to prosecute it with diligence. Instead of doing so, no claim was asserted during the lives of the parties, nor until 1819, nor any suit brought until 1821; when, it seems, a suit at law was brought, which was pending two or three years and then dismissed ; the executor of O. Whittle having then, for the first time, discovered that the debt was not due by parol, as he had supposed, but by a specialty which had been lost. In 1825 this suit was brought in equity. In 1827 an order was made for the settlement of the account of L. Tazewell’s executor. Afterwards, in the same year, for the first time, depositions were taken to sustain the claim. In 1829 the order of account was placed in the hands of a commis *353 sioner, whose report was not made until 1834; after which nothing further was done until 1841, when leave was obtained to file an amended bill, which accordingly filed, but more than a year thereafter. In 1846 an order was, for the first time, made, to take an account of what was due from the estate of L. Tazewell to the estate of C. Whittle; and it was not until 1853 that the decree'was made from which this appeal was taken. It would be difficult to excuse such gross laches in such a case. The excuse assigned for it is wholly inadequate for the purpose. A just account cannot now be settled. The proper parties to make the settlement are not in esse, but have long been in their graves. Their representatives know little or nothing about the facts; and even the original representatives of the alleged debtor have long since passed from the stage. There may or may not be something due. It is matter of conjecture merely; and the most probable conjecture is that nothing is due. I think we must so conclude; and, at all events, that no relief can now be given on account of the claim for rent.
For the foregoing reasons, I am of opinion' that the decree ought to be reversed, and the bill dismissed with costs.
The other judges concurred in the opinion of Moncure, J.
Decree reversed.