Staples, J.
The first, .question to be considered is whether the debts in controversy are barred by the statute of limitations. It is conceded by the counsel for the appellants that the act of March 3d, 1866, known as the stay law, expired on the 1st of January, 1869; but he insists that the several orders issued by the military authorities having control of the state of Virginia in the years 1868 and 1869, extended the operation of that act until the 26th of January, 1870, and that these orders have all the force and effect of legislative enactments.
It might be a sufficient answer to this argument to say that the military orders to which the learned counsel refers, are not in this record, and do not appear to have been relied on in the court below.
They are not acts or proceedings of which this court will take judicial notice, but ought to have been proved as other facts in the cause. Burke v. Miltenberger, 19 Wall. U. S. R. 519. It is not necessary, however, to rest our decision upon this ground. The orders in question clearly have no such effect as is claimed for them in this case, as will be apparent from a moment’s consideration. The first military order relating to executions was issued on the 22d December, 1868. It simply provides that the stay of executions against personal property, *383 which, by the provisions of “ the stay law,” would expire on the 1st of January, 1869, shall be extended till the 1st of July, 1869; and if on or before the last named day the ■ debtor shall have paid all the interest then due, execution should, he further stayed until other orders from headquarters. All the subsequent orders -were to the same effect, simply continuing the stay of execution. All of them were subject to certain conditions with respect to the payment of interest, and unless these conditions wrere strictly complied with, the debtor was not entitled to the stay of execution.
The military authorities in issuing these orders did not undertake or profess to extend all the provisions of the stay law; hut only so much of it as related to executions and the forced sales of property.
This court, in all the cases before it involving the construction of that act, has decided that the statute of limitations was suspended until the 1st of January, 1869; not, however, because the creditor was prevented from suing out execution, but because the seventh section of the act had provided that “the period during which the act should remain in force shall be excluded from the computation of the time within which, by the operation of any statute or rule of law, it might be necessary to commence any proceeding to preserve or prevent the loss of any right or remedy.” If the legislature had reenacted and extended every provision of the stay law omitting this section, it cannot be questioned that the result would have been the complete restoration of the statute of limitations on the 1st of January, 1869. The military orders do not profess to continue the seventh section. They make no sort of reference to it. Their whole object was to prevent forced sales of property after the stay law had expired by its own limitation until relief could be afforded by the legislature. It is not to be sup *384 posed that the military officers then commanding in Virginia designed to do more than provide for an emergency,, an extraordinary condition of affairs, which demanded immediate action; and this construction can be placed upon their conduct without doing violence to their language. It is unnecessary therefore to decide a question, sometimes suggested, whether the courts would now recognize as valid the order of any militaiy commander suspending-the statute of limitations for a longer period than that prescribed by the legislature. Ho such question arises here, and it need not be considered.
My opinion is, as stated in previous cases, that the 1st of January, 1869, is to be regarded as the period at which the stay law ceased to operate and the statute of limitations again commenced to operate in Vii’ginia.
The main question in this case is, whether the provision in the will of the testator charging his real estate with the payment of his debts prevented the running of the statute of limitations as to the debts in controversy ? Prior to the act hereafter mentioned, it was settled that a devise of real estate for the payment-of debts, or a charge upon it, which was in effect the same tiling, created a trust as to the proceeds of such real estate for the payment of all those debts which were not barred at the time of the testator’s death; and after that event the statute did not so run as to affect the claims of such creditors upon the proceeds. Chandler's ex'x v. Neal's ex'or, 2 Hen. & Mun. 124. In some of the earlier cases it was held that a devise for the payment of debts had the effect of reviving debts already barred by limitation; but this doctrine has been long since exploded, and it is now held that such a devise does not take a debt out of the operation of the statute. Burcke v. Jones, 2 Ves. & Beam. 275; 7 John. Ch. R. 293; Tazewell v. Whittle's *385 adm'r, 13 Gratt. 329; Baylor's lessee v. Dejarnette, 13 Gratt. 152; 1 Rob. Prac. 346.
In this state of the law the legislature passed the act of March 17th, 1842, (Acts of 1841 and ’42, page 55), the first section of which provides that where any person shall die seized of any real estate which he shall not by his will have charged with or devised subject to the payment of his debts, the same shall be assets to be administered in courts of equity ratably for the payment of all the just debts of such person, as well debts due on simple contract as on specialty, subject, however, to a proviso that no debt should be charged on the realty which was not evidenced by writing signed by the debtor or his agent.
The second section provided that no testamentary provision charging the debts of the testator generally upon Ms real estate shall be held to prevent the operation of the statute of limitations against such debts, unless it shall plainly appear to be the intent of such provision that the said statute shall be no bar to their recovery.
"Wliat is the meaning of this latter section ? Does it apply to all the debts of the testator charged upon his real estate, or is it to be confined to such debts as are barred by the limitation at the time of his death ? Prior to the enactment of the first section, which must be considered along with the second, the real estate of a person dying intestate was liable only for debts of record and debts evidenced by bond in which the heir was bound. The statute just cited abolishes this rule of the common law. It gives effect to a devise for the payment of debts; but when there is no such devise the real estate is to be applied pro rata to all the just debts of the decedent, provided they are evidenced by writing. Subject to this single qualification the'act makes the real estate liable to the debts of the decedent in the same manner and to the *386 same extent as under a devise for the payment of debts generally. In the one case to be administered, perhaps, as legal, and in the other as equitable assets.
The legislature having thus placed upon the same footing, so far as the real estate was concerned, debts provided for by the testator and debts provided for by the statute, by the second section of the act already cited applied to both the same limitation, unless the testator plainly indicated a difierent intention. The testator, in making his real estate assets for the payment of his debts generally, was doing no more than the statute effected without the devise; it was proper, therefore, to apply to those debts the same rule as to all other debts in the administration of the real assets. And this was by way of analogy to the principle governing a bequest of the personal estate for the payment of debts; which was never regarded as creating a trust, or as preventing the running of the statute of limitations. The reason is that such a bequest does no more than the law declares, and that is, that the personal estate shall be assets for the' payment of debts. It is very true that the act of 1842 excludes debts due by account, whereas a devise for the payment of debts generally would embrace them; but this was only an additional reason for applying the statute of limitations. If we turn to the revisal of 1849, we shall find abundant confirmation of this view. The phraseology of the second section of the act of 1842 is materially changed, and is incorporated in the chapter on limitations. It is as follows: “ Ho provision in the will of any testator devising his real estate or any part thereof subject to the payment of his debts, shall prevent this chapter from operating against such debts, unless it plainly appear to be Hie testator’s intention that it shall so operate.” Code of 1849, ch. 149, § 9.
*387 This is in effect a legislative declaration that all the provisions of that chapter in regard to the limitation of actions shall apply in favor of the testator’s debts, although there is a devise of real estate for their payment, unless it plainly appear that the testator otherwise intended. The devise is not of itself sufficient evidence of the intent. It must appear from some provision or phrase independent of the devise, which indicates the purpose of the testator.
When the testator specifies the particular debts he means to be paid out of ..his realty, but little difficulty can arise with respect to his intention. It may be safely presumed these debts have not been paid, and that it was his purpose they should be paid, at all events, without regard to the limitation. 13ut when the charge is for the payment of debts generally, the testator has no reference to any particular debt. It is not to be presumed his intention was to provide for an indefinite extension of time in favor of all who might assert claims against his estate.
The legislature, at the revisal of 1849, changed also the first section of the act of 1842. It abolished the distinction between debts evidenced by writing, and debts not in writing. It made the real estate assets for the payment of all the debts of the decedent, whether due by bond, note, or open account: so that if we hold that the statute has no application to debts which were not barred at the period of the testator’s death, we establish a rule which protracts indefinitely the settlement of estates in favor of all classes of creditors. I think the legislature in declaring that a devise for the payment of debts shall not prevent the statutes of limitation from operating against such debts, has plainly manifested the intention to apply the rule to all debts of the testator, whether barred or not at the time of his death.
*388 The statutes of limitation in former times were no great favorites with the courts. But the spirit of modem opinion and of modern legislation is to regard them as statutes of repose. Their tendency is to afford protection against stale demands, by requiring the early settlement of claims when the true state of the transaction is known and capable of explanation. In Head v. Manner’s adm’rs, 5 J. J. Marshall, 255, the supreme court of Kentucky says: “It was better that an indulgent or negligent creditor shall be subjected to the hazard of losing a just demand as the penalty of delay, than that the crafty and dishonest should be encouraged to sue for claims that had been satisfied, but the extinguishment of which could not be expected to be proved satisfactorily after the lapse of several years; and that it was essential to the just and wholesome administration of the law in its remedial action on private rights, that some period shall be fixed beyond which the citizen may not be harrassed, but may feel secure and enjoy repose.” Joynes on Limitation, 117; Sutton v. Burras, 9 Leigh, 385; Bell v. Morrison, 1 Peter’s R. 361. These observations apply with great force to the estates of dead men. Such estates are peculiarly liable to unjust claims from the loss of papers, the removal and death of witnesses, and above all, the death of the only person in general capable of explaining the real nature of the transaction.
The whole spirit of our legislation is to require speedy settlements of such estates, not merely that the demands of creditors may be adjusted, but that persons interested as legatees and divisees or distributees may understand the extent of their liabilities and the nature and value of their interests.
But if a testator inclined to be just as well as generous, puts into his will a charge upon his real estate for the payment of his debts, thereby suspends the operation of *389 the statutes of limitation as to all persons who may assert claims against his estate, it is manifest that there is no security against unjust demands or vexatious and expensive litigation.
I think a liberal interpretation should be given to the statute, an interpretation in harmony with the spirit of our legislation. My opinion is that under the present law, a devise of real estate for the payment of debts does not suspend the operation of tlie statute of limitations as to such debts, whether they are barred or not at the death of the testator, unless it plainly appears that such was his intention.
Applying these rules of construction to the debts in controversy, it appears that the note of $531.14 executed by George T. Wilson, and the account for $155.40, due the appellant as trustee, and also the account for $372.89, due J. T. Gerst, are within the operation of the statute, and are barred by the limitation. The note for $192.15, due the appellant as trustee, is not barred, and constitutes a valid obligation.
The decree of the circuit court is therefore substantially correct on the meiits. There is, however, a difficulty in the case growing out of an irregularity in the proceedings in the court below. The commissioner to whom the accounts were referred for settlement, made a statement oí the debts which m Ins opinion are barred by limitation. This part of the report was excepted to by the plaintiff, who insisted that the debts were not barred, as reported by the commissioner. At the December term, 1875, after the commissioner’s report was completed and returned, the defendants filed their answer, and in it relied upon the statute of limitations. Tins answer was excepted to as not being responsive to the bill in one particular not connected with the question of limitation. The exception was sustained, the answer *390 rejected as insufficient, and the defendants directed to answer more fully. The courtthereupon, without waiting for the answer, at the same term proceeded to decide the cause upon its merits, entered a decree as though an answer was in the cause and the plea of the statutes of limitation pleaded. It is very clear that the court having directed the defendant to file a better answer, ought to have waited until such answer was filed, or afforded the defendant an opportunity of doing it before rendering a decree on the merits.
The question now arises what course is to be pursued here ? If the cause is sent back there is no doubt the defendant will rely upon the statute of limitations. There is no reason to believe that the aspect of theuase will be varied by any further proceedings. The court is as fully possessed of every fact as it will be upon any further inquiry. If it be that the defendants cannot claim the benefit of the statute of limitations without relying upon it in the court below, it is apparent they did rely upon it before the commissioner and in their answer, and they ought not to be deprived of its benefit here because the court rejected the answer as insufficient upon other grounds.
The decree of the circuit court is, however, erroneous iu abating the interest accrued dining the war upon the debts reported by the commissioner. One of these only is due the appellant, that is to say the note of $192.15; the others are due to creditors not appealing in this case. All the debts are secured by. judgment, bond or note obtained or executed before the war. bio ground is suggested for abating the interest except the existence of war. According to numerous decisions of this court this constitutes no sufficient reason for the abatement of interest where the creditor and debtor are citizens and subjects of the same government.
*391 My opinion, therefore, is to amend the decree of the circuit court in this particular, and as amended to affirm it.
The other judges concurred in the opinion of Staples, J.
The decree was as follows:
The court is of opinion, for reasons stated in uniting and filed with the record, there is no error in the decree of the circuit court, except in abating the interest which accrued during the war upon the debts set out in Commissioner Atkins’ report, which interest ought to have been allowed on said debts by said circuit court. It is therefore adjudged, ordered and decreed that the said decree of the circuit court be amended in this respect; and as amended stand affirmed.
.Decree amended and aeeirmed.