# Richmond.

## SMITH v. PATTIE.

### APRIL 15th, 1886.

STATUTE OF LIMITATIONS—*Barred claims—Administrator should plead—Creditor of heir may plead.*—Where administrator is sole heir and distributee of his intestate, and there are judgments against him individually which attached to the intestate's estate as soon as it descended upon his said heir and distributee, and there are debts against the intestate which are barred by the statute of limitations, the administrator cannot revive those debts and repel the bar by any promise in writing or otherwise, but is bound to plead the statute against those debts; and if he refuses or fails so to do, it is the right of the judgment creditor, by reason of his interest in the fund, to interpose the plea.

Appeal from decree of circuit court of Fauquier county, pronounced December 26, 1883, in a chancery cause under the style of *Smith* v. *Pattie and others,* wherein Thomas Smith is plaintiff and William A. Pattie and others are defendants, and the suit of *Kercheval* v. *Kercheval,* which was ordered to be heard with the first-named suit. By the decree the commissioner's report of August 26, 1883, in *Smith* v. *Pattie,* was confirmed, and the claims of James S. Pattie against the estate of Otho H. Pattie, deceased, were allowed, though out of date. If they are to be paid then, they will intercept and consume the estate of said decedent which otherwise would go to Smith's judgment debtor, William A. Pattie, as sole heir of the decedent, and be

subject to the lien of that judgment. William A. Pattie, being also administrator of the decedent, refused to plead the statute of limitations to said State claims. Smith excepted to said report on the ground that said claims, so reported allowed, were barred. But the circuit court overruled the exception, and from its decree said Smith obtained an appeal and *supersedeas*.

Opinion states the case.

*A. D. Payne* and *W. W. Gordon*, for the appellant.

*Brooke & Scott*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

This was originally a simple bill in equity by Thomas Smith to enforce the lien of his judgment against the real estate of his judgment debtors, John J. James and William A. Pattie, the bill seeking an account to ascertain the real estate of the judgment debtors liable to said judgment. It seems that John J. James had no estate to be subjected to the plaintiff's judgment. The bill charged that the lots on Winchester street, in the town of Warrenton, which had been conveyed by several deeds to James S. Pattie and Otho H. Pattie, and which they subsequently, by the deed of the 5th of April, 1872, conveyed to their father, William A. Pattie, trustee, to be by him held for the mutual benefit and ownership, as joint tenants, of the said James S. and Otho H., and the other beneficiaries therein named, the brothers and sisters of the said James S. and Otho H. Pattie, had been bought by and paid for with the means of William A. Pattie, and that he was in equity the real owner thereof, and that the property was, therefore, liable for the complainant's said judgment. And

the bill charges alternatively that if the said deed of April 5, 1872, is valid, and vests the property in said lots as therein provided, then the said Otho H. Pattie having died intestate, unmarried and childless, his interest descended to his father, William A. Pattie, the complainant's judgment debtor, and that complainant's judgment at once attached as a lien thereon. The bill also charges that William A. Pattie is the equitable owner of the 210 acre-tract mentioned. As to the last named charge, and also as to the charge that William A. Pattie is the equitable owner of the lots mentioned in the deed of April 5, 1872, the bill is not sustained by proof.

It is, however, admitted that Otho H. Pattie was the owner of an undivided sixth of the property conveyed in trust to William A. Pattie by said deed of April 5th, 1872, and that on his death the same descended to William A. Pattie, the complainant's judgment debtor, as the heir-at-law and sole distributee of said decedent. In the progress of the cause the judgment debtor, William A. Pattie, filed his individual answer admitting the validity of the complainant's judgment, and admitting that Otho H. Pattie owned an undivided sixth interest in the lots in Warrenton, and that the same descended to him on the death of said Otho H. Pattie; but alleged, affirmatively, that the decedent was indebted in a sum greater than the value of said interest; and further stated that he had qualified as the administrator of said Otho H., and insisted upon being made a party defendent in his said fiduciary capacity. The amendment was made, and the said William A. Pattie was admitted a party defendant, as the administrator of Otho H. Pattie, and as such administrator, he filed his answer, in which he repeated the allegation in his former individual answer, that the interest which had descended to him from said Otho H. Pattie was not equal to the indebtedness of the intestate, but he does not intimate anything as to the char-

acter of the debts or to whom due. Thereupon a decree was entered in the cause declaring the interest of Otho H. Pattie in said real estate, which had descended to said William A. Pattie, liable to complainant's judgment, and directing an account of the liens upon said interest so descended. Thus amended, the suit was no longer one simply for the enforcement of the complainant's judgment lien, but became also a suit to administer in equity the estate of the intestate, Otho H. Pattie. It must, therefore, be treated as in the nature of a creditors' suit.

It has been shown that the master reported, though in an irregular way, the value of the aforesaid interest of Otho H. Pattie at $500, and that it was sold to T. E. Pattie for that sum, which was treated by the master as assets which actually went into the hands of William A. Pattie, as "administrator and trustee"; the whole of which sum is credited in the account stated and reported by the master as paid by William A. Pattie, as such administrator and trustee, to James S. Pattie on the debt of $756.78 reported in his favor, and leaving, as reported by the master, a balance of $303.02 still due James S. Pattie. By this mode of stating the account, the entire interest and estate of Otho H. Pattie is converted into assets in the hands of the administrator, and absorbed as a credit on the debt reported in favor of James S. Pattie, when there is not in the record even an atom of evidence either fixing the value of the Otho H. Pattie interest at $500, or intimating that there ever was a sale of the same to T. E. Pattie, or any one else. On the contrary, so far as shown by the record, the account, as stated and reported, is but a baseless assumption by the master. Indeed, it satisfactorily appears that no such sale was ever made to T. E. Pattie. This clearly appears in the printed argument of counsel for the appellee, where, in referring to the debt of $752.78, reported in favor of James S. Pattie, and suggesting that the interest of Otho H. Pattie in the town lots was

estimated at $500, it is said: "There seems to have been an effort to settle this indebtedness, in part, by a sale of the share of O. H. Pattie to T. E. Pattie at that price, on the 3d of January, 1881, which, however, resulted in nothing. But if it had been sold at that price, there would still have been a balance of J. S. Pattie's debt unpaid of $303.02." Thus, by the argument here of counsel for the appellee, everything reported by the master is refuted, except the fact of the report of the debt in favor of James S. Pattie. Under such circumstances it is impossible to conceive upon what principle the court below overruled the complainant's exceptions to said report and confirmed the same, especially as the report was excepted to because (among other things) the value of the Otho H. Pattie interest, reported at $500, was less than its real value, and because said sum was reported as assets which had come to the hands of the administrator. That the action of the court below was, in this respect, altogether erroneous, there can be no doubt.

We come now to the one important question in the case, the answer to which must determine the merits of this controversy, and that is, was the debt reported in favor of James S. Pattie, against the estate of Otho H. Pattie, barred by the statute of limitations when proved before the master? That more than five years had elapsed from the time of the accrual of the right of action is conceded; but it is insisted that, by the obligation of William A. Pattie, of January 1st, 1879, to James S. Pattie, by which the former, as distributee and heir-at-law of Otho H. Pattie, acknowledged the responsibility of the estate of said Otho for the amount of the three negotiable notes, and bound himself to pay the amount thereof, with interest, there was a new promise as of that date by the heir-at-law and sole distributee which renewed the liability of the estate as of that date, and that the statutory period not having thereafter

elapsed, the debt was not barred.    For obvious reasons this position is wholly untenable.

The consideration for the promise is expressed in said obligation in this language: "And bind myself in consideration of his" (James S. Pattie) "not suing or superseding me" (Wm. A. Pattie) "as administrator to pay them" (the notes) "out of any assets of said Otho H. Pattie which I may receive; and I bind myself personally, and in right of the estate, to pay the above-mentioned sum, with interest, to the said James S. Pattie, he having surrendered the original notes to me," &c.    This obligation is dated January 1st, 1879.    William A. Pattie was not appointed administrator until May 12th, 1879, nearly four months and a half after.    The new promise relied on was made by William A. Pattie in his individual capacity, and could not bind the estate of Otho H. Pattie, between whom and the promisor there was no privity, and consequently the promise could only bind William A. Pattie individually.    The fact that William A. Pattie acknowledged the responsibility of the estate of Otho H. Pattie, and promised, as distributee and heir-at-law, and personally, and in right of the estate, to pay, does not add an iota of legal sanctity to the obligation over and above the ordinary simple obligation to comply with one's contract; nor can it, by possibility, serve to charge the estate, as such, of Otho H. Pattie, with a single farthing not lawfully due; and this because William A Pattie had no authority either to make any contract charging the estate of Otho H. Pattie, or to change, alter or renew any contract or obligation entered into by the latter during his lifetime.    What, then, was the effect of the contract between William A. Pattie and James S. Patttie, touching the obligation held by the latter on Otho H. Pattie? It was either a voluntary payment and discharge by William A. Pattie of the obligation of Otho H. Pattie, or it was an assignment by James S. Pattie of the original obligation on Otho H.

to William A. Pattie; and whether it be held the one or the other, the result is the same; the debt then ceased to be a debt provable against the estate of Otho H. Pattie; for in the one case the original debt of Otho H. Pattie to James S. Pattie having been discharged by the acceptance by the latter of the obligation of William A. Pattie for the same debt, it was thereafter the debt only of William A. Pattie, and, as such, enforceable against his estate, but necessarily in subordination to the lien of the complainant's judgment which attached *eo instante* upon the death of Otho H. Pattie, and the descent of his interest in said real estate to William A. Pattie, the judgment debtor; and in the other case, William A. Pattie being the assignee of the debt, it became a part of his estate, and, of course, also liable to complainant's judgment; in other words it became merged in the estate of William A. Pattie, who had taken by inheritance the entire estate of Otho H. Pattie, the original debtor, and by necessity the obligation no longer existed.

James S. Pattie not only accepted the obligation of William A. Pattie, but he, at the same time, delivered the three negotiable notes to him, with the endorsement that they were delivered on the back of each, and with the words superadded to each endorsement: "See his obligation to me of even date." Here are all the ear-marks of the acceptance of something other than money in payment and discharge of the debt of a third person, and the surrender of the evidence of debt to the payer. Payment may be made by a third person, a stranger to the contract. 2 Bouv. L. D. 314. Evidence that anything has been done and accepted as payment, is evidence of payment. *Ib.* 313, and numerous authorities cited. The possession merely of a bill of exchange by the exceptor is *prima facie* evidence of payment. *McCullough* v. *Montgomery*, 7 Serg. & R. (Penn.) 17; *The People* v. *Howell*, 4 Johns. 296; *Dennis* v· *Hart*, 2 Pick. (Mass.) 204.

But this case stands on much higher ground. Can it be doubted for a moment that, with the acceptance of the obligation of William A. Pattie by James S. Pattie, and the delivery by the latter of the obligations of Otho H. Pattie, endorsed as they were, to William A. Pattie, he could have sold and conveyed the interest inherited from Otho H. Pattie, clear of any liability, so far as shown by the record, except for the complainant's judgment, the lien of which had attached as aforesaid? Surely, it cannot be doubted that he could have done so. Yet, in the face of all these facts, James S. Pattie appears before the master with the surrendered negotiable notes in hand, without a word of explanation as to how he regained the possession of them, and proves the debt in his name against the estate of Otho H. Pattie, on the ground of the original obligation. This was, evidently, an after thought, suggested when it was doubtless discovered that the arrangement of January 1, 1879, with all its amplitude of various forms of promises, as embodied in the obligation of that date, was unequal to the task of defeating the lien of the complainant's judgment.

But it is insisted that, though the debt of James S. Pattie was barred by the statute, it was only so barred in favor of the administrator—had there been personal assets—but not as to the heir in respect to real estate, unless he chooses to plead it. The statute of limitations, while it is purely a *personal privilege* as to a living party, who may avail himself of it or not, as he may choose, is not such as to an executor or administrator, because as there is no privity of contract between them and a testator, or intestate's creditor, the law does not presume that they can know whether a demand is just or unjust; and hence there is a manifest distinction taken between the declarations and promises of the original debtor and those made by a personal representative, who may have no personal knowledge of the transactions.

The very object of the law in creating the office of executor or administrator is to guarantee the lawful administration of the testator's or intestate's estate. Hence our statute (Code 1873, chapter 126, section five,) provides that: "Before any grant of administration, as of the estate of an intestate, the person to whom it is granted shall, in the court granting it, give bond and take an oath that the deceased has left no will, as far as he knows, and that he will faithfully perform the duties of his office to the best of his judgment." And by section seven of chapter 128, it is provided that, "if any personal representative, guardian, curator, or committee, shall pay any debt, the recovery of which could be prevented by reason of illegality of consideration, lapse of time, or otherwise, knowing the facts by which the same could be so prevented, no credit shall be allowed him therefor." And by section eleven, chapter 146, it is provided that "no acknowledgment or promise by any personal representative of a decedent, or by one of two or more joint contractors, shall charge the estate of such decedent, or charge any other of such contractors, in any case in which, but for such acknowledgment or promise, the decedent's estate or another contractor could have been protected under the eighth section." These statutory provisions show that it is the duty of a personal representative to protect, not only the personalty which may come to his hands in due course of administration, but to protect the *estate* of the decedent. It is the duty of the personal representative, for the reasons already given, to interpose the bar of the statute of limitations to every claim not properly asserted within the statutory period; and where the claim was barred in the lifetime of the testator or intestate, no promise of the personal representative can revive the claim so as to take it out of the statute.

In 1 Rob. Pr. (new), 577, it is said: "To allow items due five years before a decedent's death to become a charge upon

his estate because of an acknowledgment or provision made by his personal representative, would not have been very consistent with the legislative intent manifested." In respect to the duties of a personal representative, it is said, in *Tunstall* v. *Pollard*, 11 Leigh, 1, by Tucker, J.: "I incline to think an executor is always bound to make this defence—that is, the statute of limitations, unless it be waived by those who are interested." In the case in hand it must be borne in mind that other persons are interested besides such real or pretended creditors of Otho H. Pattie as his representative and heir, Wm. A. Pattie, may choose to favor; the real creditors of William A. Pattie himself are interested, and he will not be allowed, either by neglect of his duty or by collusion with others, to defeat the object of the statute or the just claims of his *bona fide* creditors, who, by their diligence have, to say the least, acquired a priority of right. In *McCulloch* v. *Davis*, 22 Eng. C. L. R. 385, it is said: "Executors have no right to waive any legal defence to such an action; and if they did, and were to pay a debt against the recovery of which there was any legal bar, they would lay themselves liable over to those who were interested in the testator's property." *Rogers* v. *Rogers*, 3 Wend. R. 503, is to the same effect; and such is the settled law of this State. See also *Sieg* v. *Acord*, 21 Gratt. 365, where all the authorities on the subject are collected and reviewed by Anderson; J.

It can make no difference that in this case the administrator and heir is one and the same person; the duty imposed by law upon the personal representative still requires him to protect and lawfully administer the *estate* of his decedent; and no estate is lawfully administered where the personal representative has neglected or failed to make any defence of which the decedent, if living, could have availed himself. But it is objected that to require the administrator in such case to rely

upon the statute would be in effect to compel the heir to plead it against his will. This is not the case. Though the administrator and heir be the same natural person, yet for obvious reasons in the eye of the law they are considered and treated as separate and distinct persons, having distinct rights, so that the duties imposed by law upon the personal representative cannot be subordinated to the will or caprice of the heir, especially where the creditors of the latter are interested in the property inherited by him. The office of a personal representative is to so administer the estate of his decedent as to protect it against all stale demands, for the reason that such, in the eye of the law, do not constitute valid charges against the estate to be administered. This duty a personal representative can in nowise waive or neglect; for if he were permitted to do so, then it would be in his power, not only to defeat the statute, but, by fraudulent collusion with pretended creditors, to bring serious loss, if not ruin, upon the estate. It is against the policy of the law, and opposed to the principle of protection extended to the estates of deceased persons, that a personal representative should be clothed with the exercise of any such dangerous discretionary power. He must faithfully administer according to law. When this duty has been performed by interposing the statute against all claims not lawfully chargeable against the decedent's estate, the necessary effect is to protect, not only the personal, but the whole estate. And when this is done, if it turns out that the entire estate is consumed in the payment of *lawful* charges, the heir cannot complain, for he takes subject to all lawful demands against the estate. On the other hand, just to the extent the estate comes to the hands of the heir, after the payment of all lawful demands, it is liable to his debts, and hence his creditors are interested. It is, therefore, clear that it is the duty of a personal representative, when sued at law, to plead the statute of limitations as to all claims

which were barred at the time of action brought, though when he is plaintiff the statute may be relied upon in an action at law, to a matter of set-off, without formal plea. See *Trimyer* v. *Pollard*, 5 Gratt. 460 ; *Bell* v. *Crawford*, 8 Gratt. 110. Nor, where the debt was barred in the lifetime of the testator or intestate, can the personal representative make a promise which will take the case out of the statute, though he may, as in *Bishop* v. *Howison*, 2 Leigh, 537, where the debt is known to be just, and is about to be barred, after the death of the testator or intestate, make a promise to pay, which will prevent the operation of the statute.

How is it in equity ? For obvious reasons the same general principles apply as at law, though the same strictness of pleading is not required in equity as at law ; and the same duties are incumbent upon the personal representative in the one case as in the other. In courts of equity in this State, whilst the defence of the statute may and ordinarily should be made by plea or answer, it is not the common practice to plead the statute formally, but to rely upon it in general terms in the answer. " The only reason for requiring the defence to be made by plea or answer is, that the plaintiff may have an opportunity, if he can, to take the case out of the operation of the statute ; and anything in an answer which will apprise the plaintiff that the defendant relies on the statute, will be sufficient, if such facts be averred as are necessary to show that the statue is applicable." 1 Bar. Ch. Pr., 83 ; *Tazewell* v. *Whittle*, 13 Gratt. 344.

Not only is it the duty of an executor or administrator to make this defence in equity as well as at law, and not only may he avail himself of the statute by plea or answer, but he, or any person interested, may do so, where an account has been ordered and taken with the view of administering the assets in equity, by an exception to the report of the commis-

sioner. Hence, in 1 Barton's Chy. Pr. 85, it is said: "It is competent to any party interested in a fund to take advantage of the statute, and this notwithstanding the executor of a deceased party refuses to do so." Citing *Tazewell* v. *Whittle supra;* and *Shewen* v. *Vanderhorst,* 4 Cond. Eng. Ch. R. 458.

In the last named case, the lord chancellor said: "The question here is—when a decree has been pronounced taking possession of the estate and vesting it in the court for the purpose of distribution, a decree, by which the accounts are directed to be taken, and the assets are to be administered in the master's office, and after which the common law must be altogether silent, whether under these circumstances—if the objection that the statute has barred the remedy be raised against a debt, and in whatsoever way, or by whomsoever, being parties in the suit, be they creditors, or executors, or even volunteers, the objection be raised, it must not be considered fatal? And without at present saying how far the master is himself entitled to set up the objection, I can see no reason, certainly, why it may not be competently taken by a creditor, or volunteer, as well as by the personal representative." The case of the appellant here certainly comes within the principle of the authorities last referred to. He was a party to the suit, and directly interested in the fund to be administered—the interest of Otho H. Pattie in the town lots which, on his death, descended to William A. Pattie, and to which the lien of the appellant's judgment instantly attached, subject only to the debts of the decedent, lawfully chargeable against his estate, so inherited by Wm. A. Pattie. And when Wm. A. Pattie, as administrator of Otho. H. Pattie, refused or failed to avail himself of the defence of the statute as against the debt claimed by Jas. S. Pattie, it was entirely competent for the appellant, Smith, to do so, and this he did by an exception to the commissioner's report. It would be strange, indeed, if the appellant should

Opinion.

not thus be allowed to contest the right of Wm. A. Pattie, in effect, to give away to the satisfaction of debts which, in contemplation of law, had no existence—the estate which he had inherited, and which should, in law and good morals, be dedicated to the payment of his debts. A rule in equity which would deprive a party of the privilege of availing himself of the benefit of the statute under such circumstances would certainly operate great injustice, and tend to sustain and promote fraud.

In any just view which may be taken, we are clearly of opinion that the circuit court erred in its decree of December 26th, 1883, in overruling the complainant's exception to the master's report, setting up the statute of limitations to the claim of James S. Pattie against the estate of Otho H. Pattie, and in confirming said report; and that the said decree must be reversed and annulled with costs to the appellant, and the cause remanded to said circuit court for such further proceedings to be had therein as may be necessary to effect the relief prayed for in the complainant's bill, and in accordance with the views set forth in this opinion.

LEWIS, P., and FAUNTLEROY, J., dissented.

DECREE REVERSED.