# Richmond.

## LEITH'S ADM'R v. CARTER'S ADM'R AND ALS.

### NOVEMBER 10th, 1887.

1. PERSONAL REPRESENTATIVES — *Statute of limitations.*—Administrator may interpose bar of limitations by plea or answer, or by exceptions to report. *Smith* v. *Pattie*, 81 Va. 654.
2. IDEM—*Case at bar.*—L. owed Mrs. B., the legatee of her deceased husband, who was surety on bond of C. to D. Under ante-nuptial settlement, Mrs. B. and L. were married. L. paid off the bond, got decree against C.'s estate, collected part, and in 1873 died. She died in 1881. In 1884, her administrator filed petition in pending suit, claiming that L. had paid bond with her separate funds, and to have refunded the part collected, and to be substituted to benefit of the part not collected. Evidence failed to prove the facts alleged. Administrator of L. set up bar of statute :

HELD :
    The claim was without merit, and, moreover, was barred.

Appeal from decree of circuit court of Loudoun county, sustaining certain exceptions by H. N. Rector, administrator of W. L. Leith, to the report of the master returned eighteenth October, 1884, in the cause of Carter and Leith against G. W. Carter, and dismissing the petition filed therein by E. S. Anderson, administrator of Christiana Leith. From this decree the latter administrator appealed. The opinion states the case.

*R. H. Tebbs* and *Payne & Alexander*, for appellant.

*B. P. Noland*, for appellees.

RICHARDSON, J., delivered the opinion of the court.

The essential facts are these: On the first of October, 1852, Geo. W. Carter, with B. F. Carter and John A. Beavers as his sureties, executed a bond to John P. Dulany for $800, payable two years after date, with interest from date, payable semi-annually. The said John A. Beavers died about the year 1858, leaving a will by which he gave to his wife, *Christiana,* one-half of his estate absolutely, and a life estate in the other half. Washington Beavers was appointed by the will executor, and he duly qualified and proceeded to administer the estate. Later, said Washington Beavers having died, W. M. Beavers became the administrator with the will annexed of said John A. Beavers, whose estate seems to have been a small one.

There was a suit in the circuit court of Loudoun county by the style of Beavers against Beavers, the object of which seems to have been to have a settlement of the accounts of Washington Beavers as personal representative of John A. Beavers, and for a distribution of the testator's estate. There appears in the record here the following certified extract from what seems to be an *ex-parte* settlement of the accounts of Washington Beavers as executor of John A. Beavers:

"1860. March 14th.—By amount due estate to balance, $1,445.49. Amount due Christiana Beavers on amount left her for life, $77.89."

This is certified by the clerk of the court to be an extract from the settlement on record in his office. It simply serves to show, first, that the personal estate of John A. Beavers amounted to $1,445.49; and, second, that there was due his widow, Christiana, on the half thereof left her for life only, the sum of $77.89, as of the fourteenth of March, 1860. Other extracts from settlements *ex-parte,* and from settlements of accounts ordered and taken in said suit of Beavers

against Beavers, appear in the record, but they are in the main actually unintelligible, and serve to confuse rather than elucidate the subject in controversy.  For instance, in virtue of a decree rendered in said suit of Beavers against Beavers, at the April term, 1881, of the circuit court of Loudoun county, the commissioner reports on the thirtieth September, 1881, as follows:

*The estate of John A. Beavers, in account with Washing-ton Beavers, his executor:*

| | | |
|---|---|---|
| 1860. March 14.—By amount due to balance, | $1,445 | 49 |
| Less amount paid to Mrs. Beavers, and since released to her by the heirs on account of debts paid by her for the estate, - - - | 722 | 75 |
| Leaving due estate by executor, - - - | 722 | 74 |
| Int. from death of Mrs. Beavers, Jan. 1st, 1881, | 36 | 14 |
| Total due November 1st, 1881, - - | 758 | 88 |

The estate is chargeable with two legacies:

| | | | |
|---|---|---|---|
| To Serepta Young, - - - | $500 00 | | |
| To int. from Jan. 1, 1881, - - | 25 00 | | |
| | | $525 | 00 |
| To Mary Murray, - - - | $500 00 | | |
| To int. from Jan. 1, 1881, - - | 25 00 | | |
| | | $525 | 00 |

This is all that this extract contains, except this remark by the commissioner: "The note paid by Mrs. Leith, Mr. Beavers, is in suit in the chancery causes of Carter and Leith against Carter and Carter against Carter, and part of it will probably be realized.  Whatever may be received should be accounted for as part of the estate of John A. Beavers, should be decreed to the executor."  This statement of the commissioner is not only not intelligible, but

in the light of the record here, the conclusion announced has no support whatever. First, how is it possible, out of an estate of $1,445.49 with which the executor is charged as of the fourteenth of March, 1860, to bring that executor in debt, as of the first of November, 1881, in the sum of $758.88, when he is credited with $722.74, or half of the estate in his hands, as of the fourteenth of March, 1860, and when, as the commissioner states the account, the estate was chargeable with two legacies amounting to more than the other half of the estate? Second, while it is true that the case of Carter and Leith against Carter was ordered to be heard, and was heard, with Carter against Carter—and doubtless for the reason that relief was sought in both suits against the same defendant—there is no warrant in the record here for the statement that the fund here in question was being litigated in both of said suits so heard together.

The chronological order of events has been thus temporarily departed from in order to bring at least partially to view the administration of the estate of John A. Beavers. Much connected with which has been awkwardly mixed up with the record here.

Mrs. Christiana Beavers having intermarried with W. G. Leith, an arrangement seems to have been entered into between the said Leith and the said Washington Beavers, executor of John A. Beavers, by which W. G. Leith assumed the liability of the estate of John A. Beavers on said bond of $800 to John P. Dulany, and said Leith and B. F. Carter, who, with John A. Beavers, was a surety on said bond, settled the same with Dulany and lifted the bond. On that bond there appear these endorsements: 1st. "Int. due from Oct. 1, 1860." 2d. "The within bond, with interest from Oct. 1, 186—, settled with me by B. F. Carter and W. G. Leith. (Signed) JOHN P. DULANY."

Having satisfied said debt to Dulany, B. F. Carter and

W. G. Leith, in February, 1871, filed their bill in the county court of Loudoun against George W. Carter, the principal obligor in said Dulany bond, and against Francis M. Carter, in his own right and as surviving trustee of said George W. Carter, who was a non-resident, but had a life interest in certain real estate—it being in a tract of 281¾ acres of land in Loudoun county which was devised in trust by Jonathan Carter for the use of said George W. Carter. The proceeding, as against said George W. Carter, was by foreign attachment in equity, and the object was to subject the interest of said George W. Carter in said real estate to the payment of said Dulany debt, which had been discharged by said B. F. Carter and W. G. Leith.

George W. Carter answered, acknowledging his indebtedness to the plaintiffs as charged in their bill, and the liability thereto of his interest in said real estate. And at the July term, 1871, of said court a decree was rendered that "the complainants, B. F. Carter and William G. Leith, do recover of the defendant, G. W. Carter, $800, with interest from October 1st, 1860, and their costs," &c., and a commissioner was directed to ascertain and report liens. On the eleventh of December, 1871, among other liens on the interest of G. W. Carter in said land, the commissioner reported the debt due from G. W. Carter to B. F. Carter and W. G. Leith at $1,340, with interest accrued.

In July, 1873, W. G. Leith died, and H. N. Rector became his administrator, and the cause was revived in his name. In August, 1873, the cause was by operation of law transferred to the circuit court of said county, and at the January term thereof, 1879, the cause was ordered to be heard with the case therein pending of John R. Carter against George W. Carter; and at the same term a decree was entered directing a sale of the interest of George W. Carter in said land, and directing a distribution of a fund, for rents, then in the hands of F. M. Carter, trustee.

Mrs. Christiana Leith (formerly Beavers) died in 1881, having survived her last husband, W. G. Leith, eight years, and the appellant, E. S. Anderson, became her administrator.

Under decrees of the circuit court of Loudoun county the rents and proceeds of the interest of George W. Carter in said real estate were distributed to B. F. Carter and W. G. Leith's administrator until the January term, 1884, of said circuit court. At that time, the appellant, the administrator of Christiana Leith, filed his petition in said suit of Carter and Leith against Carter, setting forth that his decedent, Christiana, was the wife of W. G. Leith, a plaintiff in the cause of Carter and Leith against Carter; that there was a marriage settlement between said Christiana and W. G. Leith, and that the debt reported as due in that cause to W. G. Leith was really paid by Christiana Leith ("as will more fully appear by proceedings in Beavers against Beavers, and *ex-parte* Christiana Leith's estate account"), and accounted for to said W. G. Leith, it being originally due by her former husband (John A. Beavers) as surety, who left his estate for life to petitioner's decedent, and that petitioner was, therefore, entitled to recover all of the said amount, as well that already paid to W. G. Leith's administrator as that still to be collected. And the prayer of the petition was for leave to the petitioner to file his petition, be made a party defendant in the cause, and that the fund in hand be decreed to him, as well as that still to come in, and that Howard Rector, administrator of W. G. Leith, deceased, be required to refund to petitioner the amount theretofore received by him in said cause on said account, &c.

H. N. Rector, administrator of W. G. Leith, answered this petition, giving a full history of the manner in which the share of John A. Beavers in the Dulany debt was discharged by his decedent, W. G. Leith, and denying positively, and

of his own knowledge, that the liability of said Beavers was discharged with the money of said Christiana Leith; and insisted that, even if she did furnish it, in 1870, as claimed, it was a simple contract debt as between them as of that date, and was barred by the statute of limitations.

The matter was then referred to a commissioner, who returned his report October 18th, 1884, saying, "the debt due by John A. Beavers and B. F. Carter, as sureties for G. W. Carter, to John P. Dulany, as far as the share'of J. A. Beavers was concerned, was paid with funds belonging to Christiana Leith, in hands of W. G. Leith" (see exhibit 1, filed with answer of W. G. Leith's administrator); so that any recovery against G. W. Carter should be paid to Christiana Leith's administrator.

W. G. Leith's administrator filed six exceptions to this report. On the twenty-ninth of October, 1884, the cause was heard, when a decree was rendered sustaining exceptions 4 and 5 filed by the administrator of W. G. Leith, and, without passing on the other exceptions, dismissing the petition with costs. From that decree Christiana Leith's administrator obtained an appeal to this court.

We are clearly of opinion that the claim asserted by the appellant, whether viewed as a stale claim or upon its merits, is not only one that was barred by the statute of limitations when first asserted, but is unsustained by evidence, and, so far as disclosed by the record, never had any foundation in fact.

This is a controversy between two administrators—the one asserting claim to a fund as belonging to the estate of his decedent, and the other, in behalf of his decedent's estate, resisting the claim on the grounds, first, that the claim is barred by the statute of limitations; and, second, that the claim never had any foundation in right. The fund thus in dispute is the proceeds of a decree rendered by the circuit court of Loudoun county in the suit of B. F.

Carter and W. G. Leith (in the life-time of the latter) against George W. Carter, or so much of said proceeds as has been, or is yet to be, distributed to the administrator of W. G. Leith. As has been stated, that decree was founded upon a debt (evidenced by bond) of George W. Carter, with B. F. Carter and John A. Beavers as his sureties, to John P. Dulany; that John A. Beavers, one of said sureties, died, and Washington Beavers became his executor; that, after directing the payment of his debts, John A. Beavers, by his will, gave his estate, real and personal, to his wife, Christiana, for life, and half thereof to her absolutely; that the personalty which came to the hands of the administrator of John A. Beavers amounted to $1,445.49; that W. G. Leith, the appellee's decedent, intermarried with Christiana, the widow of John A. Beavers, and thereafter, the Dulany debt remaining unpaid, and payment thereof being demanded, W. G. Leith assumed the liability thereon of John A. Beavers, deceased, and he and B. F. Carter, the other surety, paid off and lifted the Dulany bond, and then they brought the suit styled *Carter* and Leith against Carter, and obtained the decree aforesaid subjecting the interest of George W. Carter in certain real estate to their reimbursement. The suit was brought in right of B. F. Carter and W. G. Leith. The Dulany bond, by the endorsement thereon over the signature of the obligee, John P. Dulany, showed that it had been paid by B. F. Carter and W. G. Leith, and, neither Mrs. Leith nor anyone else asserting anything to the contrary, the decree was naturally and rightfully rendered in *their favor*.

W. G. Leith died in 1873. His wife, Christiana, was eight years his survivor. Some three years after her death, to-wit: in January, 1884, this claim on behalf of her estate is first heard of. At this time her administrator, E. S. Anderson, filed his petition claiming the fund decreed to W. G. Leith in the suit of Carter and Leith against Carter, upon

the bare assertion that the Dulany debt was really paid by his decedent, Christiana Leith, between whom and said W. G. Leith there was a marriage settlement, &c.

Now as to the statute of limitations. It was entirely competent for the administrator of W. G. Leith to interpose the bar of the statute, either by plea, by answer, or by exceptions to the commissioner's report. He did so by his answer to the petition; and when the commissioner's report came in to the effect that the Dulany debt, as to the liability of John A. Beavers therefor, or his share of such liability as surety, had been paid with funds in the hands of W. G. Leith belonging to his wife, Christiana, and that her estate was therefore entitled to receive the fund decreed on account of said Dulany debt to W. G. Leith, the administrator of the latter again interposed the bar of the statute. This, as already stated, it was competent for him to do. See *Smith* v. *Pattie*, 81 Va. 654, and authorities cited.

Exceptions 4 and 5, by which the administrator of W. G. Leith raised the question of the bar of the statute, and which was sustained by the decree complained of, assert substantially that even if it were true that Mrs. Leith furnished the money to W. G. Leith with which he paid the Dulany debt, and that she had not acknowledged full satisfaction therefor, that it was but a simple contract debt of date December 14th, 1870, and could not now be enforced against W. G. Leith's estate; that all the transactions and papers on which this claim is based are of a date prior to 1873, and barred by the statute, and should have been so reported.

The facts stated in these exceptions are those shown by the record; they clearly make a case proper for the interposition of the bar of the statute, and the legal conclusion deduced therefrom by the court in sustaining these exceptions was unquestionably correct.

But it is argued that the view, as respects the bar of the

statute, set up in the answer to the petition, and in the exceptions which were sustained by the court, is a total misconception of the appellant's claim; that his claim is not one against the estate of W. G. Leith for moneys "paid him in 1870 or thereabouts," nor for any claim or debt due by W. G. Leith, prior to his death, to appellant's decedent, but a claim against George W. Carter for a debt paid for him with Mrs. Leith's funds, and not with the funds of W. G. Leith—a debt for which she, not her husband, W. G. Leith, was liable to Dulany, and which was actually paid out of her funds—and that appellant's claim against W. G. Leith's administrator is simply for money received by him in the suit of Carter and Leith against Carter since January 1st, 1879, less than five years before the filing of appellant's petition on behalf of his decedent's estate. The vice that lies at the root of this contention is in the bare assumption that Mrs. Leith had money, or put money into the hands of her husband to pay, and with which the Dulany debt was paid, in part, when there is not a particle of evidence even tending to show that Mrs. Leith had, or put money in the hands of her husband, W. G. Leith, for the purpose, or that a dollar of her money went to pay the Dulany debt. On the contrary, the endorsement on the Dulany bond, made by Dulany himself, shows that the debt was paid by B. F. Carter and W. G. Leith; and all the proceedings in the suit by them against George W. Carter, the principal obligor in the Dulany bond, were in their right, and for their unquestioned benefit, until this claim was asserted, which was thirteen years after the institution of that suit, eight years after the death of W. G. Leith, and some three years after the death of Mrs. Leith. Nothing is shown to take the case out of the statute, and more than five years having elapsed before the assertion of the claim, and Mrs. Leith's hands being, by reason of her marriage contract, free to control her own estate, it is manifest that

the claim was barred by the statute, and that the circuit court did not err in sustaining said exceptions 4 and 5 and dismissing the petition of Mrs. Leith's administrator.

Now as to the merits. In this regard, after the conclusion above announced, nothing really need be said, nor would there be but for the strange mixing up of the matter really in controversy here with other wholly immaterial and irrelevant matters, as they appear in a wretchedly made up record, and from which earnest and even plausible arguments are drawn favorable to the appellant's claim.

As has been already shown, nothing was vouched in the petition asserting this claim except *ex-parte* settlements touching the estate accounts of Mrs. Leith after her death, and certain proceedings had in the suit of Beavers against Beavers, before referred to, neither of which, in the absence of independent evidence in support of the appellant's claim here, can have any rightful influence in determining this controversy.

In his answer to the petition of the administrator of Christiana Leith, the administrator of W. G. Leith not only positively denies the claim asserted, but, of his own knowledge, affirms that the Dulany debt, or John A. Beavers' share of the liability therefor, was paid not with the funds of Mrs. Leith, but with W. G. Leith's own funds; and his deposition, which appears in the record, is to the same effect. Moreover, he files with his answer certain papers which, with the endorsements thereon, would seem to preclude forever all idea of the validity of the claim asserted against his decedent's estate. He relies on the endorsement on the Dulany bond, signed by Dulany himself, that it was settled with Dulany by B. F. Carter and W. G. Leith. He then exhibits with his answer the following papers and endorsements thereon:

No. 1.

"$722.75. January 1st, 1862. Mr. W. G. Leith: You will

please pay Christiana Beavers seven hundred and twenty-two dollars and seventy-five cents, with interest from date, and oblige your friend,

"WASHINGTON BEAVERS."

Endorsements: "Received, December 14, 1870, of W. G. Leith, on the within order, six hundred and sixty-three dollars." "$59.50. Received the within in full, August 4th, 1873.                      CHRISTIANA LEITH."

No. 2.

"Due Mrs. Christiana Leith twenty dollars, it being for value received. As witness my hand and seal this eighth day of March, 1873.                W. G. LEITH. [Seal.]"

Endorsement: "$20.50. Received the within in full, August 4th, 1873.            ·    CHRISTIANA LEITH."

No. 3.

"Received, August 4th, 1873, of H. N. Rector, eighty dollars, payment in full of all claims against the estate of W. G. Leith, deceased, to date.

"Due bill,   $20 50            CHRISTIANA LEITH."
"Note bal. of, 59 50
                             ———————
                $80 00

It will be observed that in noting the two items which make up this last receipt, the $59.50 item is referred to as "balance of note." This is an obvious mistake. It is the balance of the accepted order of January 1, 1862, as shown by the second endorsement on said order. The same mistake frequently appears in the record, and it is so explained in the answer of H. N. Rector, to whom the last above receipt was executed, and who was the administrator of W. G. Leith, and took the receipt on making a final settlement with Mrs. Leith.

Christiana Leith, before her marriage with W. G. Leith, was Christiana Beavers, widow of John A. Beavers, deceased. After the payment of the debts of her first husband (John

A. Beavers) she was entitled, under his will, to receive and
hold his entire estate, real and personal, for her life, and
one-half thereof was her's absolutely.   It appears from
the extract of an *ex-parte* settlement of the executorial
accounts of Washington Beavers, executor of John A. Beav-
ers, first above referred to, that said executor was charged,
as of the fourteenth March, 1860, with $1,445.49, which was
the amount of the present estate, and that there was then
due Christiana Beavers, on the half thereof *left her for
life*, only the sum of $77.89.   It elsewhere appears that
she received the entire half thus left her for life.   And in
an account stated and returned September 27, 1881, under
a decree in said suit of Beavers against Beavers, rendered
in April, 1881, the executor of John A. Beavers is charged
with the amount of said personalty ($1,445.49) as of March
14th, 1860, "less amount paid to Mrs. Beavers, and since
released to her by the heirs on account of debts paid by
her for the estate," leaving due the estate by the executor
$722.74, which, with interest thereon from the death of
Mrs. Leith (formerly Beavers)—January 1st, 1881, to Novem-
ber 1st, 1881—amounted to $758.88.   This balance was due
from the executor of John A. Beavers to Mrs. Leith under
the will of John A. Beavers (her former husband) as of
November 1st, 1881, if the settlement was a correct one.
But it was not correct; for, having long previous thereto
paid to Mrs. Beavers (afterwards Leith) the half of the per-
sonal estate going to her for life, the executor of John A.
Beavers subsequently, to-wit: on January 1st, 1862, and
before her second marriage, paid her the remaining half—
which was her's absolutely—by the order drawn by him
(Washington Beavers) in favor of her on W. G. Leith,
whom she subsequently married.   Inasmuch, therefore, as
the first half paid by the executor to Mrs. Beavers was that
which was her's for life only, and as it was subsequently
released to her by the heirs on account of debts paid by

her for the estate, and as the remaining half (which was her's absolutely) was paid by the aforesaid accepted order on W. G. Leith before she intermarried with him, it is obvious that the executor of John A. Beavers stood fully discharged as to the personal estate which came to his hands.

Yet, strange though it be, there appears in the record here an extract from an *ex-parte* settlement of the accounts touching the estate of Christiana Leith, returned or stated June 9th, 1883, in which his estate is charged with $722.75, "the amount due the estate of John A. Beavers, deceased, being amount received by said Christiana, widow of John A. Beavers, under his will, and reverting to the estate of testator at the death of the devisee." And on this amount the interest is calculated and reported from the death of Mrs. Leith (formerly Beavers) to July 1st, 1883, $104.77, making clearly an erroneous charge against Mrs. Leith's estate in favor of the estate of John A. Beavers, on account of her life interest therein, which she had received, it is true, but which had been released to her by the heirs of John A. Beavers, as shown above. The error which thus crept into this *ex-parte* settlement touching the estate of Mrs. Leith was doubtless due to the report theretofore made by Commissioner M. N. Wise in the said suit of Beavers against Beavers and returned September 27th, 1881, under a decree rendered in said cause in April, 1881, in which the commissioner, after referring in general terms to the Dulany debt as having been paid by Mrs. Leith, without referring to anything as the basis of such suggestion, and after also referring to it as in litigation in the causes of Carter and Leith against Carter, and Carter against Carter, says: "Whatever may be recovered should be accounted for as part of the estate of John A. Beavers, and should be decreed to the executor."

This palpably erroneous and, so far as shown by the

record, utterly unwarranted suggestion was the entering wedge to all this trouble. It doubtless misled the commissioner (Powell) who made the subsequent settlement, *ex-parte,* above referred to, touching the estate of Mrs. Leith. But strangest of all, the court, though this report of Commissioner Wise was excepted to, overruled the exceptions and confirmed the report. In the light of so much of the record in said suit of Beavers against Beavers as appears in the record here, it is inconceivable upon what ground the decree could have rested. But that decree, whether right or wrong, was in another and distinct suit, and cannot of itself affect this controversy.

Later, when issue was taken as to the matter here in controversy, and an account was ordered, it was stated and reported by the same commissioner (Wise), who again reports, as we have seen, that the Dulany debt was paid, so far as the share of John A. Beavers was concerned, with funds in the hands of W. G. Leith belonging to Mrs. Leith; and for this he vouches only, and strangely, too, "Exhibit 1" filed with the answer of W. G. Leith's administrator, which is the order above set forth of January 1st, 1862, drawn by Washington Beavers on W. G. Leith in favor of Christiana Beavers (afterwards Leith)—Washington Beavers being at that time the executor of John A. Beavers, deceased, and Christiana Beavers then not having intermarried with W. G. Leith.

It is a singular contention in this case, that the order thus drawn by Washington Beavers in 1862, and accepted, as we must presume, under all the circumstances, on or very soon after its date, represents the fund in the hands of W. G. Leith belonging to Mrs. Leith with which W. G. Leith discharged the liability of John A. Beavers as one of the sureties of George W. Carter in the bond to Dulany. In other words, that by virtue of said accepted order held by Mrs. Leith on her husband, her money was in his hands;

that with *it* he discharged the obligation of her former husband to Dulany, for which the estate devised to her by her said former husband was liable, and that she is, therefore, entitled to intercept and have for her reimbursement the fund decreed to her husband, W. G. Leith, in said suit of Carter and Leith against Carter, as well that already distributed to the administrator of W. G. Leith as that yet to be disbursed. Here, again, the answer recurs, "all this contention has no other foundation than baseless assumption." Every material and relevant fact and circumstance disclosed by the record stands opposed to it. Dulany's endorsement on the bond that the debt was satisfied to him by B. F. Carter and W. G. Leith; the prosecution in their name and right of the suit of Carter and Leith against Carter, and all the proceedings therein prior to the assertion of this claim by the administrator of Mrs. Leith long after her death; the absence of any evidence left by Mrs. Leith that she had any such claim, and the absence of any intimation during her husband's life, and while the suit of Carter and Leith against Carter was being prosecuted by him as one of the plaintiffs in his own right, or after his death, during the eight years that she survived him, that she had any such claim; the payment in full of the Washington Beavers order in her favor, accepted by W. G. Leith before their marriage, as appears by receipts endorsed thereon over her own signature; and, lastly, her final settlement with H. N. Rector, administrator of her deceased husband (W. G. Leith), and her receipt to him for $80, "in full of all claims" against the estate of her said husband—all these clear and cogent proofs stand solidly arrayed against and proclaim the invalidity of appellant's claim, to say nothing of its staleness.

Moreover, between Christiana Beavers, widow of John A. Beavers, and W. G. Leith there was a marriage contract entered into prior to their marriage, by which her estate

was settled in trust to her separate use, but subject to her control, free from the control of her husband by the then contemplated marriage, and free from liability for his debts. She is shown by the record to have been a sharp-sighted, prudent business woman—one who knew her rights and was not backward in asserting them. It is, under the circumstances disclosed by the record, incredible that she could have been ignorant of her rights, or that, knowing, she would have slept on them.

To repel the cogent facts and circumstances which so fully sustain the decree of the court below, and to over-turn that decree, the appellant has nothing to rely upon but the deposition of a single witness, one W. L. Goch-nauer, who, after responding to the usual introductory questions as to age, residence and occupation, is asked two questions: " Are you acquainted with the facts in regard to the controversy between the administrator of W. G. Leith and the administrator of Christiana Leith; if so, please state all you know about it?"

Answer. " I think I know all about it. Mrs. Leith was an aunt of mine, and was frequently at my house—every day or two—and after Mr. Leith died she lived there six or seven years. She had Mr. W. G. Leith's note for seven hundred and odd dollars—I think there were some odd dollars—it was in and about $700. She had it before the war. It went on, and after the war she wanted the money, and he would not pay it. He would not pay the interest. The security debt of John A. Beavers, her former husband, and B. F. Carter to John P. Dulany was brought up, and I told her that was the time for her to get her money due her by Mr. Leith, and make him pay it. He made arrange-ments with Dulany. I suppose he gave him his note, and then he came back and settled with her, but did not take up his note. He had sold her a house for $150, to be moved on to her farm, when the house and barn had been

VOL. LXXXIII—114

burned, but he charged her $50 more, making $200, and knocked the war interest off the security note and added these together, so as to credit as large as possible on the note he owed her."

This is the entire deposition. If, as the deponent states, he knew all about the matter in controversy, then it is apparent that no witness ever knew so much and told so little, or ever took more pains to keep to himself what was relevant and admissible, and at the same time disclose in fewer words so much that was merely conjectural and altogether irrelevant and inadmissible; nor yet, if his conjectures be true, ever more completely overturned the theory of the party on whose behalf he testified.

First. The deponent says that before the war his aunt, Mrs. Leith, held Mr. Leith's note for seven hundred, or seven hundred and odd, dollars; that after the war Mrs. Leith wanted her money and Mr. Leith would not pay it— would not even pay the interest; and that in a conversation between Mrs. Leith and deponent (it is not pretended that Mr. Leith was present), at the house of deponent, the *security debt* of John A. Beavers, former husband of Mrs. Leith, and B. F. Carter to John P. Dulany "was brought up," when deponent told Mrs. Leith that that was the time to get her money—that is, the money on the *note* which, deponent says, Mrs. Leith held on Mr. Leith before the war. This in no way is connected with the matter in controversy, nor does it even tend to uphold the appellant's contention that the liability of the estate of John A. Beavers, deceased, was discharged by W. G. Leith with money in his hands belonging to his wife, Mrs. Christiana Leith; for the note spoken of by the deponent was a note executed prior to the war, whereas the order drawn by Washington Beavers, executor of John A. Beavers, on W. G. Leith in favor of Mrs. Leith was drawn in the midst of the war period.

Second. But if the deponent's statement is, or could be, the correct one, then his advice to Mrs. Leith that "that was the time for her to get her money," &c.—that is, the money due on said *note*—would seem to have been efficacious, for the witness proceeds to say, in substance, that Mr. Leith made arrangements with Dulany, and that the former, as witness *supposes*, gave Dulany his note, and then came back and settled with his wife, Mrs. Leith, but did not take up his note held by her. Thus, the deponent, the only witness relied on by the appellant, proves, if anything, not that the liability of the estate of John A. Beavers to Dulany was discharged with money in the hands of W. G. Leith belonging to his wife, Mrs. Christiana Leith, but was discharged by said Leith in his own right and with his own means; for if it be true that he took in the note held by Dulany, and on which John A. Beavers was a surety, he discharged a liability upon the estate of said Beavers for which the property devised by him to Mrs. Leith stood charged, and the amount thus paid or settled by him was a valid claim against the estate of John A. Beavers, and a valid set-off against any claim held by Mrs. Leith against him, whether such claim was the accepted order aforesaid, or the *ante-bellum note* spoken of by the deponent, Gochnauer.

But, in point of fact, there never was any such note. By mere inadvertence the accepted order aforesaid was repeatedly spoken of as a note, and by persons entirely familiar with the transactions between the parties; and it is altogether probable that the deponent, Gochnauer, who was a nephew of Mrs. Leith, and often in her company, heard her, and perhaps others, speak of the order as a *note*, and thus got into the confusion which is so palpable on the face of his statement. All this, however, is explained in the answer of W. G. Leith's administrator to the appellant's petition setting up the claim here in question.

Third. But this deponent (Gochnauer) injects into the cause a most absurd, irrelevant and inconsistent statement. He tells us, in substance, that Mrs. Leith owned a farm, and that the house and barn thereon were destroyed by fire; that her husband, W. G. Leith, sold her, for $150, a house to be moved on to her farm; that when the settlement was made between Mr. and Mrs. Leith of which deponent speaks, that he charged her $200 for the house, instead of $150, and knocked the war interest off the *security note*, in order to get as large a credit as possible on the notes he owed her (meaning, necessarily, the note for some seven hundred and odd dollars spoken of by this deponent as having been executed prior to the war). This is a remarkably inconsistent statement. It was evidently intended to arraign Mr. Leith as an exacting husband. After, in effect, treating the debt due to Dulany as the property of Mr. Leith, the deponent says that he (Leith) charged Mrs. Leith $50 more than the contract price for the house, and, in order to make his payment on the note due from him to his wife before the war as large as possible, knocked the interest off the security debt. The only *security debt* was the debt to Dulany, the half of which is the subject of controversy in this suit, and the interest thus knocked off, as deponent says, was, to say the least, about double the amount of overcharge on the house. So the effect of the deponent's statement is to charge W. G. Leith with unjustly taking from his wife $50, and at the same time releasing to her interest on the Dulany debt amounting to nearly twice that sum; and all this, says the deponent, to get as large a credit as possible on the ante-war debt due his wife. If, as the witness says, Leith had become the owner of the Dulany debt, he was entitled to a credit for the principal and interest thereof on any demand his wife held against him, as the estate devised to her by her first husband was bound for said Dulany debt. But, at

last, all that this deponent says is in reference to a settlement touching a debt due by Leith to his wife before the war, and is wholly irrelevant to the matter here in controversy, about which the deponent (Gochnauer) evidently knows nothing.

There is nothing in the record to warrant the imputation of unfair dealing on the part of W. G. Leith with his wife, nor anything tending to show that his estate is indebted to her's in any amount whatever. Indeed, the record shows that Mrs. Leith carefully watched and amply protected her rights. It is incredible that she could, under the circumstances, have been ignorant of her rights, or that, knowing them, she would have hesitated to protect them. Long after her husband's death she settled with his administrator, and in due form executed her receipt in *full of all claims against his estate.* This is conclusive; nothing more can be required.

The decree complained of is right, and it must be affirmed, with costs to the appellee—the costs to be paid by the appellant, the administrator of Christiana Leith, deceased, out of her estate in his hands to be administered.

DECREE AFFIRMED.