Opinion.

97   565
e100  193
100   194

97   565
101   190

97   565
103    83

## Richmond.

CROWDER, DEEKER & CO. v. GARBER.

NOVEMBER 16, 1899.

Absent, Keith, P.

1. FRAUDULENT CONVEYANCES—*Husband and Wife—Presumption—Competency of Wife as Witness.*—In a contest between the creditors of the husband and the wife, concerning a deed from the husband to the wife, the presumption is against the *bona fides* of the transaction, which she must overcome by clear and satisfactory evidence. In such contest the wife is not a competent witness. In the case in judgment the requisite evidence to sustain the deed from the husband to the wife has not been furnished.

Appeal from a decree of the Circuit Court of Augusta county, pronounced June 12, 1899, in a suit in chancery, wherein the appellants were the complainants, and the appellees were the defendants.

*Reversed.*

The opinion states the case.

*Curry & Glenn* and *R. W. Crowder*, for the appellants.

*J. H. Crosier* and *Elder & Elder*, for the appellees.

BUCHANAN, J., delivered the opinion of the court.

The object of this suit was to have set aside and annulled a conveyance of certain lots made by a husband to his wife upon the ground that it was without consideration, and was made to hinder, delay, and defraud the appellants, creditors of the husband, in the collection of their debt.

On account of the great facility which the marriage relation affords for the commission of fraud, transactions between husband and wife are to be closely scrutinized to see that they are fair and honest, and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors. In a contest between the creditors of the husband and his wife there is, as there should be, a presumption against the *bona fides* of the transaction which she must overcome by clear and satisfactory evidence. *Flynn & Royalty* v. *Jackson*, 93 Va. 341, and cases cited; *Darden* v. *Ferguson*, 27 S. E. R. 435; and *Kinnier* v. *Woodson*, 94 Va. 711.

The consideration stated in the deed sought to be set aside is $1,500 in hand paid. The wife in her answer does not claim that she paid anything when the conveyance was made, but alleges that, from the time of her marriage down to the year 1890, she had, including what she had inherited, accumulated in cash of her own separate estate the sum of $625, which said sum, during the year 1890, she, through her husband, had invested in lots in Buena Vista, Va., which she sold during the same year at large profits, which added to the principal, netted her about $1,800, and that with this sum she directed her husband to purchase the lots in controversy for her own separate use; that he did so purchase them, but the conveyances were taken and recorded in his name, not in her name, as they ought to have been, and that as soon as she found that this had been done she required her husband to convey the same to her, as was originally intended.

After her answer was filed, and before the testimony had been taken in the case, one of the commissioners of the court was directed, among other things, to ascertain and report whether or not the deed sought to be set aside was voluntary, or made to hinder, delay, and defraud the appellants in the collection of their debts.

Whilst the case was pending before the commissioner, the

wife took the depositions of herself, of T. G. Harman, a member of the firm of real estate agents through whom the lots in controversy were purchased, and of J. W. Carter, a partner of her husband in the real estate business at the time the lots were purchased. Her competency as a witness was objected to, and the objection properly sustained by the Circuit Court. Chapter 703 of Acts of Assembly, 1897-8, p. 753.

Harman, the real estate agent, testified that, after the husband had examined the Waynesboro property, he stated that so far as he was concerned the property suited him, but that witness must see his wife, and if it was satisfactory to her (the purchase was for a home) he could consider it a sale; that he took the wife to see the property several times; that she was the only one that showed any special interest in buying; that he does not recollect what the instructions were about making the deed; that his partner drew it; that the husband paid $1,600 in cash for the property; and that he had an indistinct recollection that the husband told him that the money was to come from the sale of some property belonging to his wife.

J. W. Carter, the partner of the husband, testified in chief that he " knew that Mrs. Garber had about $1,800 of her own money, and that it was with that money that the property in question was bought. The title to the property was intended to be put in Mrs. Garber's name, her money having paid for it. The real estate agent who wrote the deed, or rather his attorney, by mistake put it in the name of Mr. Garber." He also testified that neither the firm's money nor the husband's money had anything to do with purchasing the property in question. Upon cross-examination, he was asked the following questions, among others:

1. Ques. How do you know that Mrs. Garber had $1,800? Ans. Because she told me so.

2. Ques. Where did she get it? Ans. She sold some property in Ohio.

3. Ques. How do you know this? Ans. She told me.

4. Ques. When did she sell the property in Ohio? Ans. A year or two before the purchase of the Waynesboro and Basic City property (the property in controversy).

5. Ques. How do you know this? Ans. I was told so before the purchase of the property by both Mr. Garber and Mrs. Garber.

Upon this evidence the commissioner made his report, but did not undertake to pass upon the objection to the wife's competency as a witness, nor to the numerous objections made to Carter's evidence as to what Garber and wife had told him; but stated that if these objections were sustained, the wife had not made good her defence; if they were overruled she had. He also called the court's attention to the fact that there was a glaring discrepancy in the statement made by Mrs. Garber in her answer, and the statement of witness Carter in his deposition as to where the money came from with which to pay for the property. After this report was filed, and before the case was heard, the wife took the deposition of Delaware Weaver, who testified that in January, 1890, he had aided Mr. Garber in selling a small farm lying in Fauquier county, which he (Garber) had purchased in 1881 or 1882; that the day after the sale in 1890, he saw Mr. Garber pay his wife $750 out of the proceeds of the sale ($1,575); that she claimed a half interest in it on the ground that part of the purchase money was hers with which the farm was bought. After Weaver was examined, Carter was examined a second time, and on that occasion he testified that Mrs. Garber invested the $750 which she had received from the proceeds of the Fauquier farm in some lots in Buena Vista, with her husband; that she afterwards sold these lots, and out of the proceeds of those sales Mrs. Garber got her profits and the principal ($750), and with that purchased the property in controversy.

Upon cross-examination it was shown that Carter's statements as to the source from which the wife derived her separate estate

were as in his first deposition, based for the most part upon information derived from her and her husband.

But this is not the only objection to his evidence. His last deposition as to the source from which Mrs. Garber obtained the money with which she claims to have paid for the property in question, cannot be reconciled with his first deposition on that point. In the first he states that the money was derived from sales of the wife's property in Ohio, made a year or two before the property in question was purchased. In the last he states that it was the result of the investment of $750, obtained from the sale of the Fauquier farm, in Buena Vista lots, and the profits arising therefrom. In his first deposition, although cross-examined very fully, no mention is made of the money derived from the sale of the Fauquier farm, and its reinvestment. In the last it is not pretended that any part of the sales of the Ohio property, sold a year or two before the purchase of the property in question, was used in paying for it. All these transactions had taken place before Carter was examined the first time. He does not claim to have acquired any information on the subject after his first deposition was taken.

A careful examination and comparison of Carter's depositions satisfies us that no reliance can be placed upon his testimony. It is evident that he knew very little of his own knowledge as to the material matters about which he was testifying. His statements are based chiefly upon what he had heard Garber and his wife say about the source from which the money was obtained with which the property in controversy was purchased, and their declarations as testified to by him (even if they were admissible, as for the most part they are not), as well as Carter's depositions, are so conflicting that no decree could be safely based upon either.

The other evidence in the cause is clearly insufficient to sustain the averments of the wife's answer. Without Carter's last deposition, there is nothing to show that the $750, which Weaver testifies the wife received from the Fauquier farm, was invested

in Buena Vista lots. The deeds to those lots show that they were conveyed to the husband alone. The negotiable notes given for the deferred payments on one of them was made by the husband alone. When the property in controversy was purchased, the purchase money was paid by and the conveyance made to the husband, and put on record by him, and no question ever made by the wife about it, so far as the record shows, until a few days before the note became due upon which the appellants' judgment is based. The deed by which the husband conveyed it to the wife recites a false consideration, and not the true motive for making the conveyance, if the wife's contention be true.

Upon the whole case, we are clearly of opinion that the wife has not shown by clear and satisfactory evidence that the conveyance to her was a *bona fide* transaction, and that the appellants have the right to have the conveyance as to their judgment set aside and annulled, and the lots conveyed subjected to its payment.

The decree complained of will be reversed, and this court will enter such decree as the Circuit Court ought to have entered.

*Reversed.*