# Richmond.

## ROBINSON V. BASS' ADMINISTRATOR AND OTHERS.

### January 30, 1902.

### Absent, Buchanan, J.

1. FRAUDULENT CONVEYANCES—*Husband and Wife—Burden of Proof—Presumption.*—In a controversy between a wife and her husband's creditors, the burden is on the wife to show, by clear and satisfactory evidence, the *bona fides* of the transaction. The presumption is against her, and in favor of the creditors, and the burden is upon her to show that the original transaction was a loan on her part, and that there was a contemporaneous agreement on his part to repay it. The mere possession of his bond or note is not alone sufficient to prove a loan as of its date.

2. LIMITATION OF ACTIONS—*New Promise—Insolvency of Debtor—Right of Other Creditors to Plead.*—An insolvent debtor may make a new promise to pay one of his creditors a debt barred by the act of limitations, and may give a specific lien on his property to secure the same; and in the absence of fraud, other creditors cannot object. The new promise is not *per se* such a fraudulent act as will entitle other creditors to set up the statute of limitations against the debt, or the security given for it. The only condition imposed on the creditor by sec. 2922 of the Code is that the new promise shall be in writing and signed by the debtor or his agent.

Appeal from two decrees of the Corporation Court of the city of Danville, pronounced, respectively, December 21, 1899, and February 5, 1900, in a suit in chancery wherein the appellant was admitted a party complainant, and the appellees were the defendants.

*Affirmed.*

The opinion states the case.

Argument.

*James H. Guthrie* and *Berryman Green*, for appellant, among other things, argued: "The fact that the alleged debt of $1,000 was barred by the statute of limitations at the time the attempt was made to secure it by the deed of trust, is, under the circumstances of this case, a complete bar to the right of the appellee to enforce the same against the estate of the said R. T. Bass, to the prejudice of appellant's debt. *Ayres* v. *Burke*, 82 Va. 338; *McCartney* v. *Tyrer*, 94 Va. 198; Barton's Chancery Practice (2d ed.), 86, and note 4; and cases there cited. But it is insisted in the brief of counsel for appellee that if the debt had been barred by the statute, the recognition of and promise to pay it by the deed of trust took it out of the statute of limitations. The said alleged debt being barred by the statute of limitations, the debtor could not do any act to take it out of the statute to the prejudice of his other creditors. *Ayres* v. *Burke*, *supra*. The appellant whose debt had been contracted in May, 1894, had the right, at the time of the execution of the said deed of trust on October 2, 1897, to interpose the defence of the statute of limitations to the said alleged debts and the making of said deed and 'recognizing' said alleged debts and promising to pay them cannot abridge the right of appellant to interpose that defence. The said debt was clearly barred by the statute, as more than five years had run from the 6th day of January, 1889, one day after the alleged date of the note, when it purports to have been payable, and as was said by the Court in the case of *Ayres* v. *Burke*, 'It could never be revived except by collusion between the creditor and his debtor. How far shall this confederacy be allowed to affect the rights of others in a court of equity?' This reasoning is peculiarly applicable to this case, in which it clearly appears that the alleged debt, as claimed by the appellee, was not only barred at the time of the making of the deed of trust, but was barred at the time the debt of appellant was contracted.

"The question in the case of *Ayres* v. *Burke* was as to the

Opinion.

limitation of a judgment which had been revived by *scire facias* after the ten years' limitation had run, by reason of the failure of the debtor to make defence to the *scire facias*. And although the judgment was revived at law by the solemn adjudication of the court, and was held to be valid as between the debtor and creditor, yet it was held that it having been barred by the statute, a junior judgment was given priority over it, as against the estate of the debtor."

*Peatross & Harris*, for the appellees.

CARDWELL, J., delivered the opinion of the court.

The controversy in this case is over a debt for $1,000, with interest thereon from January 5, 1889, which the Corporation Court of the city of Danville, by its decree appealed from, held to be sufficiently proved in favor of Kate M. Bass, the wife of R. T. Bass, and that this debt constituted a lien superior to the alleged lien of appellant's judgment against R. T. Bass, now deceased, on the real estate conveyed by him to John L. Penn, trustee, to secure his indebtedness to his wife.

On Jan. 5, 1889, R. T. Bass executed his note to his wife, Kate M. Bass, for $1,000, payable on demand, and on October 2, 1897, executed the deed to Penn, trustee, above referred to, which was duly recorded, conveying a certain lot in the city of Danville, with improvements thereon, to secure the payment of the $1,000 note, and two other notes to his wife, which, as the deed recites, were "for moneys that came to her from her father's estate, and which she had loaned said R. T. Bass, and permitted him to use, with the understanding and agreement that he would repay the same to her, and to repay which he now again promises."

The appellant, Jennie M. Robinson, on the 6th day of March, 1899, recovered a judgment against R. T. Bass for $1,500, with interest thereon from the 15th day of August, 1898, and costs,

upon a debt contracted on the 24th day of May, 1894, the interest on the debt having been paid by Bass to August 15, 1898. Her first contention here is that the Corporation Court erred in holding that the debt of $1,000 due to Kate M. Bass, appellee, is sufficiently proved as a debt against the estate of R. T. Bass, deceased, and *Spence* v. *Repass*, 94 Va. 716, and *Crowder* v. *Garber*, 97 Va. 565, are relied on as supporting this contention.

The rules governing in testing the *bona fides* of a transaction between husband and wife are well settled, and are concisely stated in *Spence* v. *Repass, supra.* They are, that transactions between husband and wife must be closely scrutinized, to see that they are fair and honest, and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors; that in a contest between the creditors of a husband and wife, the burden of proof is upon her to show by clear and satisfactory evidence the *bona fides* of the transaction, and in all such cases the presumption is in favor of the creditors, and not in favor of the title of the wife. And the opinion further says: "Nor is the holding of a bond sufficient evidence that at the time the bond purports to have been given it was recognized as a debt, and that both husband and wife intended to occupy the relation to each other of debtor and creditor. The burden is upon the wife to show that the original transaction represented a loan by her to the husband, and a contemporaneous promise on his part to pay the debt; otherwise, what was originally a gift to the husband in business, and used by him as a basis of credit, could subsequently, when he became involved, be converted into a debt to his wife, and thus perpetrate a fraud upon his creditors with the utmost facility and immunity." But, the transaction in that case was sustained because Mrs. Repass had successfully borne and met the burden imposed upon her, and had established with clearness and certainty that her purchase from her husband of the land in controversy was a *bona fide* transaction.

In *Crowder* v. *Garber, supra,* it was held that the requisite evidence to sustain the deed from the husband to the wife had not been furnished. She claimed in her answer to have furnished the money with which to purchase the property conveyed to her husband, and afterwards conveyed by him to her, but failed to show by satisfactory evidence that she had in fact furnished the money with which her husband purchased the property, upon a contemporaneous promise from him to repay it to her, or that she had the means out of which to furnish the money. It was, therefore, held that the conveyance to the wife was not a *bona fide* transaction, and was void as to the creditors of the husband.

In this case, the appellee, Mrs. Bass, had no property except what she derived from the estate of her father, and the uncontradicted proof is, that she received $1,000 from the estate of her father on Jan. 5, 1889, the very date the note in question bears. John L. Penn, trustee, in the deed of Oct. 2, 1897, and a brother of appellee, testifies that the fact that R. T. Bass was indebted to his wife was well known to him (witness); that from hearing conversations as to it between her and her husband, R. T. Bass, witness knew that he was using the moneys of his wife by and upon the understanding and agreement that he was to return and repay them to her, and that "he knew also that she had his (her husband's) note for a portion of these moneys." On cross-examination, he shows that his knowledge of the disposition which Mrs. Bass made of the moneys she received from her father's estate was not confined entirely to information received from her; that the matter was frequently discussed by different members of the family, and that it was generally known by them that she was lending her money, as she received it, to Mr. Bass, her husband.

Witness W. W. Brown shows that he had the closest business relations (a partner) with R. T. Bass, and intimate acquaintance with his business for years. While unable to fix the date

nearer than 1889 or 1890, because away from the records when testifying, and having to rely on his memory, he states that R. T. Bass contributed about $2,000—that he got from his wife—to the business of Bass, Brown & Lee; that "Mr. Bass agreed to get the money from his wife. He did so, and it was used in running a saw mill in Robeson county, North Carolina."

We are unable to see the force of the contention made by counsel for appellant that the fact that the date of the note for $1,000 appears to have been changed from January 5, 1888, to Jan. 5, 1889, by changing to a 9 the last 8 in 1888, at least throws a suspicion over the transaction. It would have been no change to have corrected an error in the year, and made it conform to the proper year before issuing the note. The evidence in the cause, we think, shows great likelihood that the change of the last figure 8, in 1888, for the figure 9, occurred by reason of the liability to inadvertently write the past rather than the new year in the first days of the new year; and as is well said by counsel for appellee, if R. T. Bass had been perpetrating a fraud in giving that note, if it had been an afterthought and given after the real transaction, he would not have been likely to have made just that mistake in date. If he had done so, when he found it out, he would likely have written a new note rather than have changed the old one. He got from his wife other moneys than the $1,000. He got the $1,000 Jan. 5, 1889; $1,500 Oct. 29, 1889; and $500 Nov. 13, 1890. If he had been perpetrating a deception, and giving a note for already accrued indebtedness, or for money previously gotten from his wife, and dating the note back to cover it, would he not likely have given a note, or notes, to cover all of it? There is no sort of suggestion in the evidence of any motive in perpetrating a deception by the change made in the note for $1,000, and we are of opinion that there is no error in the ruling of the lower court sustaining the *bona fides* of that transaction.

The remaining question is whether or not the new promise

made by Bass in the deed of Oct. 2, 1897, and which takes the debt out of the bar of the statute of limitations, is void as to the lien asserted by appellant on the property conveyed in the deed?

It is claimed that Bass was insolvent when the new promise was made, but, if that be material, the evidence fails to show the fact, and he thereafter, as we have seen, paid interest on appellant's debt, and held in his own right valuable property.

The statute, now section 2922 of the Code, contemplates that a debtor may take a debt of his out of the bar of the statute of limitations by a new promise to his creditor to pay the debt, or by an acknowledgment of it, from which a promise to pay may be implied, and the only condition imposed upon the right of the creditor to enforce payment of the debt is that the new promise or acknowledgment shall be in writing signed by the debtor or his agent.

The fact that the debtor was insolvent when the new promise or acknowledgment was made, would be a circumstance to be considered in determining the question whether or not there was collusion between the parties to the transaction, but the making of the new promise or the acknowledgment of the debt, from which a promise to pay might be implied, is not alone proof of collusion.

The case of *McCartney* v. *Tyrer*, 94 Va. 198, does not sustain appellant's contention that the new promise made by Bass to pay appellee's debt, is void as to appellant's lien, and that she had the right to interpose the bar of the statute of limitations as to appellee's debt. In that case the plaintiff brought his suit to enforce a mechanic's lien, which was clearly barred by the act of limitations. The opinion says that the statute of limitations is generally a personal privilege, and may be asserted or waived by the defendant at his election. Where, however, a court of equity has taken possession of the estate of the debtor for the purposes of distribution, and proceeded to ascertain the

debts and encumbrances to enable it properly to administer and distribute the assets, an exception to the general rule is allowed, and any creditor interested in the fund is permitted to interpose the defence of the statute of limitations.

In this case, when appellant sought to interpose the bar of the statute of limitations to appellee's debt, the debt was not barred, as it had been revived and taken out of the operation of the statute by a valid promise to pay it made by the debtor, Bass, as authorized by section 2922 of the Code, *supra.*

In *Ayres' Adm'r* v. *Burke, &c.*, 82 Va. 338, also relied on by appellant, it was held that "after a judgment is barred, if it be revived by *scire facias* through *collusion* between creditor and debtor, a court of equity, in a suit to enforce liens against the debtor's estate, will not give effect to the revival so as to affect the rights of other lien creditors of the said debtor, though it be effectual against himself." But in that case, the court did not hold, and we have been unable to find any decision that does, that, relieved of all possible taint of collusion or fraud, a revived judgment has no effect whenever third parties choose to complain. Collusion necessarily involves the idea of fraud, and fraud, when shown by clear and satisfactory proof, goes to the root of every transaction, and annuls it, so far as it affects the rights of innocent third parties.

In the case at bar, the debt of appellee, Mrs. Bass, in controversy, was contracted, and the note of her husband for it executed and delivered to her over five years before the debt of appellant herein asserted came into existence, and when the deed of October 2, 1897, was executed and recorded, in which there was a recognition of the debt, and a distinct promise to pay it, appellant had no lien upon the property conveyed, and acquired none until nearly two years thereafter.

There is not the slightest evidence that appellee or her trustee had knowledge of the existence even of appellant's debt against R. T. Bass when the deed securing the payment of the money

due his wife was executed, and evidence of collusion between her and her husband in reviving her debt for the purpose of defrauding his creditors, is wholly wanting.

Upon the whole case, we are of opinion that the decree appealed from should be affirmed.

*Affirmed.*