# 𝔖taunton

LULA H. GWINN V. M. P. FARRIER, ADMINISTRATOR OF
GEORGE W. SHUMATE.

September 22, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Chinn, JJ.

The opinion states the case.

*W. B. Snidow*, for the plaintiff in error.

*Williams & Farrier,* for the defendant in error.

EPES, J., delivered the opinion of the court.

This is an action brought by notice of motion for judgment by Mrs. Lula H. Gwinn against M. P. Farrier, in his official capacity as the administrator of G. W. Shumate, to recover the sum of $472.26 which she alleges is the unpaid balance due to her on the following three items which G. W. Shumate owed her at the time of his death, to-wit: (1) $300 evidenced by a note dated November 28, 1921, payable one year after date; (2) $195.00 due upon an open account for five cattle sold him in October, 1923; and (3) $12.36 for a quarter of beef furnished to him on December 20, 1923.

The notice alleges and the evidence proves that before these several demands were barred by the statute of limitations the plaintiff filed with the administrator proof of her claim and demanded payment of these items; and that he "then and there agreed and promised to pay the same."

The defendant pleaded *non est factum* to the note, *non-assumpsit,* the payment of $200 on account of the claimed indebtedness, and the bar of the statute of limitations as to all three items; and the following facts appear from the evidence:

Shumate died on November 25, 1924; on December 1, 1924, M. P. Farrier qualified as administrator of his estate; and this action was commenced on November 27, 1929, when the notice of motion for judgment was returned to the clerk's office. Some time after, probably soon after, October 2, 1925, Mrs. Gwinn presented this note and the two open accounts (the last two items being sworn to by her before a notary public) to the administrator and filed them with him; and he kept these papers until "about the day this

action was brought," when, at her request, he returned them to her.

At the time these papers were filed with him, the administrator promised her to pay these three items. He thereafter gave her two checks for $100 each to be applied on account thereof, one dated December 13, 1925, and the other March 1, 1927; and on these occasions and at later times he promised her to pay the balance.

The checks referred to were not introduced in evidence, and there is nothing in the record to show that they contained any writing on them other than an order to the bank to pay to the payee the amount therein specified; and the inescapable inference from the record is that all the promises of the administrator relied upon were oral promises.

When the administrator first refused to pay the balance of these items does not appear from the testimony of either Mrs. Gwinn or the administrator; but her son testified that "Mr. Farrier first refused to pay any more on the debt just before this action was brought."

The widow of Shumate testified that the note sued upon was not signed by him and was a forgery; that he did not get the five cattle for the purchase price of which Mrs. Gwinn sued, and did not owe for the quarter of beef for the value of which she sued; but this testimony was contradicted by witnesses for the plaintiff.

The administrator testified that he made the payments and promises above mentioned, but that he did so before his attention was called to the fact that the signature of the note was not genuine; and that later, after he had examined the signature, he was of the opinion that it was not that of G. W. Shumate, and "he then told Mrs. Gwinn, or her son, William G. Gwinn, that he would make no further payments on it."

The court, in effect, instructed the jury that there was no evidence of any fact which was sufficient to take the case out of the statute of limitations, and that the causes of action sued upon were barred.

The jury returned a verdict for the plaintiff for "the amount sued for less the credits;" but the court sustained a motion to set aside the verdict on the ground that it was contrary to the law and the evidence, and entered judgment for the defendant. From this judgment a writ of error has been allowed Mrs. Gwinn.

The assignments of error here made present only two questions for decision:

(1) Did the filing of the proof of these claims with the administrator, his unqualified promise to pay them made before they were barred, and the part payments made by him thereon before they were barred operate to take the case out of the statute of limitations?

(2) When proof of claim of a debt is filed with an administrator and he then or thereafter, before the debt is barred, promises to pay it and makes part payment thereof, is he thereby estopped to plead the statute of limitations against an action on the debt?

We think both of these questions must be answered in the negative.

Section 5812, Code Va. 1919, so far as is here material, provides as follows:

"If any person against whom the right shall have so accrued on an award, or any such contract, shall, by writing signed by him or his agent, promise payment of money on such award or contract, the person to whom the right shall have so accrued may maintain an action for the money so promised, within such number of years after such promise as it might be maintained under section fifty-eight hundred and ten, if such promise were the original cause of action. The plaintiff may sue on such promise or on the original cause of action, except that where the promise is of such a nature as to merge the original cause of action, then the action shall be only on the promise. If the action be on the original cause of action, and the defendant files a plea under section fifty-eight hundred and ten, the plaintiff shall be allowed to reply specially such promise, or he may, without

replying specially, show such promise in evidence to repel . the bar of the plea, provided he shall have given the defendant reasonable notice before the trial of his intention to rely on such promise.[1] An acknowledgment in writing, from which a promise of payment may be implied, shall be deemed to be such promise in the meaning of this section."

Section 5812 must be construed in the light of the law as it existed prior to the enactment of any similar statute,[2] and in the light of the history of this section and the statutes in which it had its origin.[3] When so construed, it provides by necessary implication that neither an oral acknowledgment or new promise to pay a debt,[4] nor a part

---

[1] The provisions of this and the preceding sentence raise this interesting question: Do they merely settle the questions of pleading and evidence raised in cases such as *Henderson* v. *Foote*, 3 Call. (7 Va.) 249 and *Fisher's Ex'r* v. *Duncan & Turnbull*, 1 Hen. & Munf. (11 Va.) 563, 3 Am. Dec. 605, or do they go further and also affect questions of substantive law? If the latter, under this section, does a new promise operate to draw down the original promise to the date thereof, or does it create a new contract and a new cause of action supported by the original consideration, or is it provided that it shall operate both to draw down the original promise and to create a new cause of action? In this connection the provision in chapter 95, Acts 1839, "That every such written promise or acknowledgment shall be held and taken to be a drawing down of the original debt or contract to the date of the said promise or acknowledgment," and the opinions in the following cases are interesting: *Butcher* v. *Hixton*, 4 Leigh (31 Va.) 519; *Farmers' Bank* v. *Clarke*, 4 Leigh (31 Va.) 604; *Aylett's Ex'r* v. *Robinson*, 9 Leigh (36 Va.) 45; *Bell* v. *Crawford*, 8 Gratt. (49 Va.) 110; *Dinguid* v. *Schoolfield*, 32 Gratt. (73 Va.) 803, 810; *Bell* v. *Morrison*, 1 Pet. (U. S.) 351, 7 L. Ed. 174.

If the contentions of the plaintiff in error were correct that section 5813 (see *post*) applies only where a debt is not barred at the time the promise is made, these questions would be of real importance at the present time.

[2] 17 R. C. L., Limitations of Actions, §247.

[3] Lord Tenderden's act, 9 Geo. IV, ch. 14, §1 (enacted 1828); 2 & 3 Will. IV, ch. 42, §5 (enacted 1833); Acts 1838, ch. 95, § 1, p. 73; Code 1849, ch. 149, §7; Reports Revisors 1849, p. 742; Code 1887, §2922; Code 1919, §5812.

[4] *Magarity* v. *Shipman* (1896), 93 Va. 64, 65, 24 S. E. 466; *Robinson* v. *Bass* (1902), 100 Va. 190, 196, 40 S. E. 660; *Kesterson* v. *Hill* (1903), 101 Va. 739, 744, 45 S. E. 288; *Wilcox* v. *Williams*, 5 Nev. 206; *Obear* v. *First Nat. Bk. of Birmingham*, 97 Ga. 587, 25 S. E. 335, 33 L. R. A. 384; *Walker* v. *Henry*, 36 W. Va. 100, 14 S. E. 440. §7, ch. 149, Code 1849, contained the express provision that, "no promise, except by writing as aforesaid, shall take any case out of the opera-

.payment[5] thereof, unless evidenced by a writing which in itself amounts to an acknowledgment of the debt,[6] shall be sufficient to take the debt out of the statute of limitations and support a recovery thereof after an action on the original promise has become barred; and that any acknowledgment or new promise to have that effect must be made by writing, signed by the person to be charged thereby or his agent.

There is nothing in section 5812 which excludes from its provisions acknowledgments and promises made by a personal representative in his official capacity, and it applies in any case in which, under the existing law, an acknowledgment, promise, or part payment[7] made by an executor or administrator is permitted to have the effect of taking an action for the recovery of a debt of his decedent out of the statute of limitations.

tion of the said fifth section" (*i. e.*, the statute of limitations) "or deprive any party of the benefit thereof." This expressed provision was omitted from the corresponding section in the Codes of 1887 and 1919, evidently because it was regarded as redundant. Its omission did not change the meaning or effect of the statute.

[5]Reports Revisors 1849, p. 744; *Bell* v. *Crawford* (1851), 8 Gratt. (49 Va.) 110, 132-133; *Magarity* v. *Shipman* (1896), 93 Va. 64, 66, 24 S. E. 466; *Grover* v. *Chamberlain*, 83 Va. 286, 5 S. E. 174, decided in 1887 under Code of 1849; *Becker & Co.* v. *N. & W. Ry. Co.*, 125 Va. 558, 560, 100 S. E. 478, decided 1919 under §2922, Code 1887. Under Acts 1838, ch. 95, §1, a question which was never decided by this court, existed as to whether a part payment was sufficient to take a case out of the statute of limitations. This question arose from the use of the following language, which was copied from Lord Tenderden's act: "No acknowledgment or promise * * * *by words only*, shall be deemed sufficient" to take the case out of the statute. But since the enactment of the Code of 1849 there has been, we think, no question that a part payment has been insufficient. See *Bell* v. *Crawford, supra*.

[6]*Wilcox* v. *Williams*, 5 Nev. 206. See, also, *Holland* v. *Chaffin*, 22 Ga. 343; *Pena* v. *Vance*, 21 Cal. 142; *Heinlin* v. *Castro*, 22 Cal. 100. It would seem that the writing evidencing a part payment to be sufficient to take the case out of the statute must itself,. at least, prove a payment made *on account* of the specific claim which is being sued upon.

[7]That the generally accepted doctrine now is that in the absence of statutory prohibition, part payment made by a personal representative before the debt is barred will take the case out of the statute, but not if made after debt is barred, see 1 Wood on Limitations (4th ed.) §116b (6).

All the promises of the administrator here relied upon were oral promises. The part payments made by him were made by two checks, but there is no evidence in the record to show that there was any writing upon either of them, other than a mere order upon the bank to pay the payee the amount therein stated, from which an acknowledgment of the debt could be implied. Therefore, were there no other statute or rule of law to prevent the promises and/or part payments made by the administrator from taking this case out of the statute of limitations, section 5812 does so.

But we are further of opinion that the provisions of section 5813, Code 1919, prevent the promises and/or part payments made by the administrator in this case from taking the case out of the statute.

Section 5813, Code Va. 1919, and the related section 5406 were first enacted in their present form as section 8, chapter 149, and section 6, chapter 132 of the Code of 1849. They have remained unchanged except for the changes in section numbers made necessary by the several Code revisions. Section 5813 and the material part of section 5406 read as follows:

§5813: "No acknowledgment or promise by any personal representative of a decedent, or by one of two or more joint contractors, shall charge the estate of such decedent, or charge any other of such contractors, in any case in which but for such acknowledgment or promise, the decedent's estate or another contractor could have been protected under section fifty-eight hundred and ten."

§5406: "* * * if any personal representative, guardian, curator, or committee shall pay any debt the recovery of which could be prevented by reason of illegality of consideration, lapse of time, or otherwise, knowing the facts by which the same could be so prevented, no credit shall be allowed him therefor."

The plaintiff in error earnestly insists that section 5813 has no application to a case in which a personal representative has made a promise to pay a debt of his decedent which was barred at the time the promise was made. Her main con-

tention is that the use in the limiting clause of the words "could have been protected" necessarily implies that it relates to the time of the promise, and that the limiting clause should be construed as if it read, "could have been protected at the time the promise was made." She argues that, before there was any statutory enactment on this subject, a promise made by a personal representative in his official capacity to pay a debt of his decedent was sufficient to take the case out of the statute of limitations if made before the debt was barred, but not if the debt was barred at the death of his decedent or at the time the promise was made; and that the words "could have been" were chosen by the revisors of the Code of 1849 and the General Assembly for the reason that they merely intended to make statutory the law with reference to a promise by a personal representative as it existed independent of any statutory provision on the subject.

This reasoning is faulty in two particulars. It does not necessarily follow from the use of the phrase "could have been protected" that "at the time the promise was made" is to be implied; and when this section was first enacted in its present form in the Code of 1849, it could not then be said that it was established as the law of Virginia that the promise of a personal representative, made after a debt of his decedent was barred, did not operate to take the debt out of the statute of limitations.

The use of "could have been protected" in the limiting clause in section 5813 is not grammatically correct, unless the section be viewed as a continuing prohibition, speaking at a time subsequent to that at which a promise then in question was made, rather than at the time of its enactment by the General Assembly.

The limiting clause in which "could have been protected" is used modifies the verb in the clause, "No acknowledgment * * * shall charge," which in this sentence is not a future tense, but a present tense expressing a present and continuing prohibition pronounced at a time prior to the mak-

ing of the promise to which it applies. "Could have been protected" is the pluperfect tense, which, whether it is considered as being in the potential or the indicative mood, expresses past action completed before some other past action, or some specified past time. When it is considered that the prohibition of section 5813 relates both to a promise made by a personal representative and to a promise made by one of two joint contractors, a construction of the sentence is not permissible which relates "could have been protected" to any action or point of time antedating the time of the promise. This being true, there is no past action or specified past time mentioned in the sentence, or referred to therein by implication, to which we can relate "could have been protected" *unless* the continuing prohibition is viewed as speaking at a time which is subsequent to the making of a promise then in question. Therefore, only when the continuing prohibition is so viewed, is it grammatically correct to use the expression "could have been protected" as relating to an action or point of time coincident with, or subsequent to, the making of the promise in question.

But, if we are to consider that the prohibition is speaking at a time subsequent to the making of the promise in question, and that, therefore, the use of "could have been" is grammatically justified, the specific time posterior to the making of the promise at which the prohibition is to be regarded as speaking is left to implication; and from the context of section 5813 and its reference to section 5810, it is not illogical to regard the prohibition as speaking after action brought, when the defendant pleads the statute of limitations. In this event it is just as logical to construe "could have been" as being related to the time action was brought, as to construe it as being related to the time the promise was made; and to construe the limiting clause to read, "In any case in which but for such acknowledgment or promise, the decedent's estate or another contractor could have been protected under section 5810 at the time action was brought thereon."

However, what would appear to be true is that the revisors and General Assembly merely loosely used "could have been" for "can be" or "could be,"[8] and omitted and left to inference the adverb of time or time clause to which it is to be related. That this is true, or that they were viewing the prohibition of section 5813 as speaking after action brought, we think appears from what is hereafter said.

Section 5813 presents two phases, one relating to an acknowledgment or promise by one of two joint contractors, the other relating to a promise or acknowledgment by an executor or administrator. We are here primarily concerned only with the latter phase, but it is necessary to understand the histories of both phases to get a clear comprehension of the true intent and meaning of the section, and to begin with the decisions of the courts rendered prior to the enactment of a statute relating to either phase of it.

Where there were two or more joint contractors the English courts held that a new promise, acknowledgment, or part payment made by only one was sufficient to take the case out of the statute of limitations and sustain a recovery against all, both where the obligation was barred when the acknowledgment, new promise or part payment was made, and where it was not; and that this was so though one of the contractors was a principal and the other a surety only, and the new promise was made by the principal without the knowledge of the surety.[9] The same rule was applied in the case of a partnership debt, and it was held that an acknowledgment made by one partner, though made after the obligation had become barred and the partnership had

---

[8]*Could be* is past in form, but it is now not regarded by the best authorities as necessarily past in function.

[9]*Whitcomb* v. *Whiting* (1781), 2 Doug. 652; *Jackson* v. *Fairbank* (1818), 2 H. Black 340; *Pernam* v. *Raynall* (1824), 9 Moore 566, 2 Bing. 306, 3 L. J. (O. S.) 271; *Burleigh* v. *Stott* (May 2, 1828), 8 B. & C. 36, 2 M. & R. 93. But in *Brandram* v. *Wharton* (1818), 1 B. & Ald. 463, the soundness of the decision in *Jackson* v. *Fairbank*, *supra*, was seriously questioned.

been dissolved, operated to take the case out of the statute as to all the partners.[10]

However, in *Tullock* v. *Dunn* (1826), Ry. & M. 416, 21 Eng. Com. L. R. 478, the court held that where there were two or more joint executors, or administrators, a new promise by one was not enough to take the case out of the statute, but that there must be a promise by both.[11]

In this state of the law Lord Tenderden's act (9 Geo. IV, c. 14, §1) was enacted May 9, 1828, which, after providing that "no acknowledgment or promise by words only shall be deemed" sufficient to take a case out of the statute of limitations, unless it was in writing, signed by the party to be charged thereby, provided as follows: "* * * where there shall be two or more joint contractors, or executors or administrators of any contractor, no such joint contractor, executor, or administrator shall lose the benefit of the said enactments" (*i. e.,* statutes of limitation) "or either of them, so as to be chargeable in respect or by reason only of any written acknowledgment or promise made and signed by any other or others of them: Provided always, that nothing herein contained shall alter or take away or lessen the effect of any payment of any principal or interest made by any person whatsoever."

Lord Tenderden's act applied only to actions upon simple contracts. However, in 1833, by Act 2 & 3 Will. IV, c. 14,

---

[10] *Wood* v. *Braddick* (1808), 1 Taunt. 104, 9 R. R. 711; *Perry* v. *Jackson* (1792), 4 Term Rep. 519.

[11] In *Atkins* v. *Tredgold* (1823), 2 B. & C. 23, 3 D. & R. 200, 9 Eng. Com. L. R. 12, the court used language which would seem to imply that it held the view that an express promise to pay made by one joint executor in his representative capacity would bind the other executors in their representative capacity, and be sufficient to take the case out of the statute, but it did not decide the question. See also *M'Culloch* v. *Dawes*, 9 Dow. & Ry. 40, 5 L. J. 57.

In 2 Wood on Lim. (4th ed.) §191, after referring to the decision in *Tullock* v. *Dunn*, cited in the text, it is said: "But under the present theory as to acknowledgments it would undoubtedly be held in England as well as in those States where the English doctrine as to the effect of an acknowledgment made by an executor prevails that an acknowledgment which would be binding on the original debtor, would also be sufficient if made by his executor."

§5, the general provisions of Lord Tenderden's act were extended to actions upon specialties; but it contained no provision relating to acknowledgments or promises by one of two or more joint contractors, or executors or administrators.

No act similar to Lord Tenderden's act was enacted in Virginia until 1838. Up to that time the Virginia court followed in the main the English decisions on this subject which had been rendered prior to the enactment of Lord Tenderden's act.

In *Shelton* v. *Cocke, Crawford & Co.* (1812), 3 Munf. (17 Va.) 191, 197 (a case in which the argument of counsel shows that the debt was barred when the new promise was made), the Virginia court in a very brief opinion by Judge Roane, held:

"The court is of opinion that, although the acknowledgment of a debt by one or more of the partners of a mercantile firm, after the dissolution thereof, is competent to do away the bar of the act of limitations, in an action brought against the firm; the *existence* of the debt being first proved by *other* testimony, or admitted by the pleadings; yet that such acknowledgment is not proper evidence of the *existence* of the debt, so as to charge the other partners; * * *."

But in *Farmers' Bank* v. *Clarke* (1833), 4 Leigh (31 Va.) 603, 610, Tucker, P., criticized as "unreasonable" the rule which permitted a principal by his promise alone to remove the bar of the statute of limitations not only against himself, but as against his surety.

In 1838 the General Assembly of Virginia enacted Lord Tenderden's act (9 Geo. IV, c. 14, §1) practically verbatim (except that it omitted the proviso relating to the effect of part payments) as section 1, chapter 95, Acts 1838. The only change made in the part of Lord Tenderden's act relating to a promise by one of two or more joint contractors or executors was to change the words "said enactments or either of them" to read "said act," thereby referring to chapter 128, Code 1819. The provisions of Act 2 & 3 Will. IV, c.

42, §5, were not incorporated in the statute law of Virginia until the enactment of the Code of 1849.

It is plain that the provisions in Lord Tenderden's act and the Virginia act of 1838 were enacted to cut up root and branch the decisions which had held that one of two or more joint contractors or personal representatives could deprive the other or others of the benefit of the statute of limitations by his sole acknowledgment of or promise to pay a debt; and that they were intended to apply and did apply both where the debt was, and where it was not barred at the time the promise was made.[12]

We turn now to the early decisions and Virginia statutes relating to the duty of a personal representative to plead the statute of limitations, and to the effect of an acknowledgment or promise by a sole executor or administrator or of all joint executors or administrators.

In *Norton* v. *Flacker* (1737), 1 Atk. 524, 526, the Lord Chancellor said: "No executor was compellable, either in law or equity, to take advantage of the statute of limitations against a demand otherwise well founded;" and this statement was, in effect, repeated in *Ex parte Dewdney* (1808), 15 Ves. 479, 498. But in *M'Culloch* v. *Dawes* (1826), 9 D. & Ry. 40, 5 L. J. 56, there is a *dictum* which might be construed to hold that a personal representative is bound to plead the statute.[13]

---

[12]In 1 Wood on Lim. (4th ed.) §81d (2), it is said: "The promise of one of several joint obligors cannot avail to revive as against the others a cause of action barred by the statute, or suspend the running of the statute. * * * Where the statute of limitations has not run out, the promise or acknowledgment of one of two joint makers of a note will prevent its operation against both; but, where the bar of the statute was complete, a promise or acknowledgment by one will only be obligatory on himself, and will not revive the demand against the other." But this certainly was not the law, independent of statutory provisions, either in England or Virginia.

[13]In *Hill* v. *Walker* (1858), 4 K. & J. 166, when this *dictum* was called to its attention, the court said: "It certainly cannot be considered to be law at the present day, that executors, paying a debt against the recovery of which the Statute of Limitations might be pleaded as a legal bar, render themselves liable over to those who are interested in the testator's property."

In *Tunstall* v. *Pollard's Adm'rs* (1840), 11 Leigh (38 Va.) 1, the question was whether under section 17, chapter 128, Code 1819, a personal representative was bound to plead the statute of limitations to a judgment rendered against his decedent more than five years before his death, upon which no *scire facias* had been issued within five years after the qualification of the personal representative. Section 17 not only provided that no action should be brought or *scire facias* issued on such a judgment; but also provided that *"all such judgments, * * * shall be deemed to have been paid and discharged."* In the opinion of the court, delivered by Tucker, P. (Parker, J., dissenting), it was held that under the facts of that case the personal representative was guilty of a *devastavit* in not having pleaded the statute and in having paid the judgments. In his opinion Judge Tucker expresses doubt as to what the general rule is with reference to the duty of an executor to plead the statute of limitations. But after referring specifically to the words above quoted in italics, says: *"Under this clause,*[14] I incline to think an executor is always bound to make this defense, unless it be waived by those who are interested; but be that as it may, I am satisfied, that there *may* be cases in which it would be his duty,"* and in the case under consideration it was his duty to plead the statute. (Italics ours.) However, Judge Tucker's opinion and the decision of the court in *Aylett's Ex'r* v. *Robinson* (1837), 9 Leigh (36 Va.) 45, which involved section 16, chapter 128, Code 1819 (see note 16 *post*), would seem to indicate that there was no general rule of law which made it obligatory on a personal representative to plead the statute of limitations.

---

[14]In quoting from this sentence in *Seig, Adm'r* v. *Acord's Ex'r*, 21 Gratt. (62 Va.) 365, 369, 8 Am. Rep. 605, Judge Anderson omits the words "under this clause." This omission has the effect of quoting Judge Tucker as holding the view that, under statutes of limitation generally, an executor is bound to plead the statute wherever it is applicable. This is not what he said, and seems to be in conflict with the view expressed by him in *Aylett's Ex'r* v. *Robinson*, 9 Leigh (36 Va.) 45. By quoting the quotation made by Judge Anderson this same error is made by the court in *Smith* v. *Pattie*, 81 Va. 654, 662, and *Radford* v. *Fowlkes*, 85 Va. 820, 849, 8 S. E. 817.

In *Putnam* v. *Bates* (1826), 3 Russ. 188 (a case in which no reference is made as to whether the debt was barred at the time the executor promised to pay it), the court held that an "admission" of a debt by an executor was sufficient to take the case out of the statute; and in *Smith* v. *Poole* (1841), 12 Sim. 17, 10 L. J. 192 (a case in which a sole personal representative had made an acknowledgment in writing of a note due by his decedent, which was then barred), the court held that the written acknowledgment of the personal representative took the case out of the statute. There is nothing, however, in the report of either of these cases to indicate that the court thought it made any difference whether the debt was or was not barred at the time the admission or acknowledgment was made.

In *Atkins* v. *Tredgold* (1823), 2 B. & C. 23, 3 D. & R. 200, 9 Eng. Com. L. R. 12, and in *Tullock* v. *Dunn* (1826), Ry. & M. 417, 21 Eng. Com. L. R. 478, the court seems to have assumed that an express promise by both of two joint executors would have been sufficient to have taken the case out of the statute of limitations, but it did not decide the point. Also in *Henderson* v. *Foote* (1802), 3 Call (7 Va.) 248 (a case in which the acknowledgment claimed to have been made by the executor was made after the debt had become barred), and in *Fisher's Ex'r* v. *Duncan & Turnbull* (1807), 1 Hen. & Munf. (11 Va.) 563, 3 Am. Dec. 605 (a case in which the account sued on was barred at the death of the testator) the Virginia court seems to have assumed that a promise made by an executor to pay a debt of his testator which is then barred is sufficient to take the case out of the statute; but in neither case does it decide or discuss this question.

In *Bishop* v. *Harrison's Adm'r* (1831), 2 Leigh (29 Va.) 532,[15] the court held that a promise of the executor to pay a

---

[15]In this case the facts were: While the debt was not yet barred, the creditor went to the executor, exhibited to him proof of the debt and told him that, as it was about to be barred, he would have to sue at once. The executor replied that he saw that the debt was just and that he would pay it, saying: "You need not bring suit, but give

debt not then barred by the statute was sufficient to take the debt out of the bar of the statute of limitations. Judge Carr says in his opinion: "The promise does bind *him,* or rather the *estate,* at least so far as to remove the bar of the statute; for the executor was clothed with full power to do what he did." And Judge Cabell, in his opinion, says: "It is clearly competent to an executor, by his promise to pay a debt of the testator, to exempt the case from the operation of the statute of limitations, and it is no *devastavit* for him to do so." While the facts show that the debt was not barred when the promise was made, there is nothing in the opinion of any of the judges to suggest that their opinion would have been different had the debt been barred at the time the executor promised to pay it.

In *Aylett's Ex'r* v. *Robinson* (1837), 9 Leigh (36 Va.) 45, the court held that a promise made by an executor to pay an open account, every item of which was barred at the death of the testator by section 16, chapter 128, Code 1819,[16] was sufficient to take the case out of that statute of limitations and maintain a recovery on the account against the executor in his representative capacity; and remanded the cause to be tried upon the third count in the declaration which alleged a new promise by the executor to pay the account. Though Tucker, P., dissented on some other points, he concurred in the view that a promise of the executor to pay the debt, if made, was sufficient to take the case out of the statute of limitations and support a recovery. See statement of facts, pp. 45-47 of 9 Leigh (36 Va.); opinion of Brockenbrough, J., pp. 50, 51 of 9 Leigh (36 Va.); dissent-

me time till money of the estate comes into my hands." The creditor waited, the executor died without having paid the debt, an administrator *d. b. n.* was appointed, and then suit was brought against him.

[16]Section 16, chapter 128, Code 1819: "If any suit be brought against any executor or administrator, 'or other person having charge of the estate of the testator or intestate,' for the recovery of a debt due upon an open account, it shall be the duty of the court * * * to cause to be expunged from such account every item thereof, which shall appear to have been due five years before the death of the testator or intestate * * *."

ing opinion of Tucker, P., pp. 53, 54 of 9 Leigh (36 Va.) ; and the judgment of the court, pp. 55, 56 of 9 Leigh (36 Va.).[17]

It was not until the enactment of the Code of 1849 (ch. 131, §3) that the real estate of a decedent was made liable generally for his debts; but prior to that time there were many cases in which a creditor of a deceased person could subject his real estate to the payment of a debt due him by the decedent.

In 1842 the General Assembly enacted chapter 98, Acts 1841-42, which is entitled "An act concerning the administration of real assets," section 2 of which provided in part as follows: "* * * no debt shall be protected against the operation of the statute of limitations by this act, nor by any *assumpsit* of the executor or administrator, so as to charge the real estate in possession of the heirs or devisees with the payment thereof." This act plainly applied to all promises made by a personal representative whether the debt was barred or not at the time the promise was made.

These were the English and Virginia cases and statutes which the revisors and the General Assembly had before them when the Revised Code of 1849 was reported and enacted, and in the light of which section 8, chapter 149 thereof, now section 5813, Code 1919, must be construed.

Prior to 1849, the Supreme Court of the United States, in *Thompson* v. *Peter*, 12 Wheat. 565, 6 L. Ed. 730, and the Supreme Court of Pennsylvania, in *Fritz* v. *Thomas* (1836), 1 Whart. 66, 29 Am. Dec. 39, had announced the broad general doctrine that the promise of a personal representative

---

[17]In *Seig, Adm'r* v. *Acord's Ex'r* (1871), 21 Gratt. (62 Va.) 365, 369-370, 8 Am. Rep. 605, in giving its reasons for its decision the court says that it is of opinion that the promise of an executor to pay a debt barred under §16, ch. 128, Code 1819, at the death of the testator could not operate to support a recovery thereof (citing 1 Rob. Proc. New, p. 577) ; and that "it is believed that no case can be found in Virginia where a different doctrine has been held." Judge Anderson in this opinion seems to have overlooked *Aylett's Ex'r* v. *Robinson, supra,* which involved §16, ch. 128, Code 1819. Judge Brannon in his opinion in *Findley* v. *Cunningham,* 53 W. Va. 1, 3, 44 S. E. 472, also seems to have overlooked this case.

to pay a debt of his decedent is not sufficient to take the case out of the statute of limitations. The statements of facts in these cases show that in the former the debt was barred when the testator died, and that in the latter it was barred at the time the promise was made, but the court does not in either case revert to this fact, or indicate that it intended the doctrine therein announced to be applicable only to cases in which the debt was barred at the time the promise was made by the personal representative.

Whatever may have been the intended scope of the doctrine announced in these two cases, it is evident from the note which they appended to what is now section 5813 that, though the revisors approved of it, they did not regard the doctrine announced in these cases as being the law in Virginia. Nor did Judge Moncure, speaking for the court in *Braxton* v. *Harrison,* 11 Gratt. (52 Va.) 30, regard it as having been settled in Virginia prior to the Code of 1849 that the promise of a personal representative to pay a debt, made after it has become barred, was insufficient to take the case out of the statute of limitations.

Though *Braxton* v. *Harrison, supra,* was not decided until 1854, it was decided upon an appeal from a decree entered in 1847, and involved a promise made by an administrator in 1828 to pay a debt of his decedent which was not then barred. The court held that a promise made by a personal representative before a debt has become barred takes it out of the statute of limitations, and that the promise in this case did so, citing *Bishop* v. *Harrison,* 2 Leigh 578. In delivering the opinion of the court Judge Moncure makes no reference to what is now section 5813 except in the quotation below made, where he has this to say with reference to a promise made by an executor or administrator after a debt has become barred: "Whether before the Code took effect, an executor or administrator might have revived a debt barred by the act of limitations, is a question which may admit of controversy, and about which there is some conflict of authority. The cases of *Peck* v. *Botsford,* 7 Conn.

172 [18 Am. Dec. 92] ; *Fritz* v. *Thomas,* 1 Whart. 66 [29 Am. Dec. 39] ; and possibly *Thompson* v. *Peter,* 12 Wheat. 565 [6 L. Ed. 730], decide or assume that he could not."

While he makes no reference to *Aylett's Ex'r* v. *Robinson,* 9 Leigh (36 Va.) 45, and the other Virginia case hereinbefore cited as bearing on this point, they probably constituted the cases to which he referred as being in conflict with the three cited by him.

In reporting the Revised Code of 1849 to the General Assembly, the revisors appended the following note to section 8, chapter 149 (section 5813, Code 1919) :

"The cases of *Atkins* v. *Tredgold* * * * and *M'Culloch* v. *Dawes,* * * * were decided by Lord Tenderden before he drew the act of 9 Geo. IV, chapter 14, and serve to explain the proviso therein in relation to executors or administrators of any contractor. Since that proviso, he[18] has held that 'as against an executor, an acknowledgment merely is not sufficient to take the case out of the statute; there must be an express promise;' that 'the promise by one is not enough to entitle the plaintiff to recover; there ought to be a promise by both.' *Tullock* v. *Dunn,* * * * a case which Parke, B., in *Scholey* v. *Walton,* * * * says, 'is founded in justice and good sense, and ought to be followed.' We think it wise not only to follow it so far as it has gone, but to go a step farther, and in accordance with the opinions of the Supreme Court of the United States in *Thompson* v. *Peter,* 12 Wheat. 565, 6 L. Ed. 730, and of the Supreme Court of Pennsylvania, in *Fritz* v. *Thomas,* 1 Whart. 66, 29 Am. Dec. 39, establish that in an action against a personal representative, in his official character, no proof of an acknowledgment or promise by him will take the case out of the statute of limitations. The section to which this note is appended will accomplish this purpose, and at the same time attain the object of the latter part of the second section of the act of 1841-

---

[18]This is a slip. *Tullock* v. *Dunn,* Ry. & M. 416, 21 Eng. Com. L. R. 478, was decided in 1826, by Abbott, Ld. C. J., not by Lord Tenderden.

42, page 55, chapter 98, section 2, which provides that no debt shall be protected against the operation of the statute of limitations by any *assumpsit* of the executor or administrator, so as to charge the real estate in possession of the heirs or devisees with the payment thereof. We omit the sixteenth section of the act 1 R. C., page 492,[19] as having been of no practical value. Its purpose, we think, will be better attained by the section to which this note is appended, with the aid of the sixth section of chapter 132, *ante,* page 678," (*i. e.,* section 5406, Code 1919, quoted *ante*). Reports Revisors, 1849, page 744.[20]

This note, which the General Assembly had before it when it enacted what is now section 5813, makes it plain that the revisors intended thereby to incorporate into it *unimpaired* the provisions of the act of 1838, relating to a promise by two or more joint contractors, and also the above quoted provisions of the act of 1842, and to extend the provisions of the act of 1842 so as to provide that no *assumpsit* by an executor or administrator shall operate to take a debt out of the statute of limitations either as against the personal estate or the real estate of the decedent.

The policy of section 5813 in so far as it relates to promises by a personal representative is stated in the opinions in *Thompson* v. *Peter* and *Fritz* v. *Thomas,* cited in the note of the revisors. It is that the estate shall be protected against promises made by a personal representative to pay debts of his decedent, because in most instances he has no personal knowledge of the transaction, and in many instances may make mistaken concessions or agreements which he ought not to make or would not make if he were fully informed with reference to the transaction.

[19]For §16, ch. 128, Code 1819, see note 16, *ante.*

[20]The note of the revisors on the words "lapse of time" in §6, ch. 132, Code 1849 (§5406, Code 1919), is as follows: "There is doubt at present as to the state of the law in regard to debts to which the statute of limitations could be pleaded. It is thought best to settle that doubt in the maner proposed by this section. See on this subject the opinion of Tucker, P., in *Tunstall* v. *Pollard's Adm'r,* 11 Leigh [38 Va.] 38." Reports Revisors, 1849, p. 679.

■ Our conclusion is that when section 5813 is construed in the light of its context, the decisions of the English and Virginia courts rendered before it was enacted, the prior statutes relating to the subject dealt with therein, the objects and purposes of those statutes, and the notes of the revisors of 1849 in the light of which the General Assembly has enacted and re-enacted it in its present form, the true construction thereof is this: No acknowledgment of, or promise to pay, or part payment on a debt of a decedent made by his personal representative, either before or after the debt is barred, shall operate to take it out of the statute of limitations.

This is the conclusion which was reached by the West Virginia court in *Van Winkle* v. *Blackford,* 33 W. Va. 573, 585, 11 S. E. 26, and by the majority of that court in *Findley* v. *Cunningham,* 53 W. Va. 15, 44 S. E. 472, in which cases it had under consideration the corresponding section of the West Virginia Code whose language is identically the same as the language of section 5813, Code Va. 1919. In speaking of the case of *Findley* v. *Cunningham, supra,* Judge Burks, in Burks' Pleading & Practice, page 406, says: "The majority opinion seems to be right. The language of section 5813 seems to prevent the personal representative from making any promise or acknowledgment that will remove the bar or prevent the operation of the statute from affecting the debt, and such seems to have been the intention of the revisors of 1849."

The plaintiff in error has cited us to three cases which she contends are authority for the position that under section 5813 a promise made by a personal representative before a debt is barred is sufficient to take it out of the statute of limitations: *Seig, Adm'r* v. *Acord's Ex'r,* 21 Gratt. (62 Va.) 365, 8 Am. Rep. 605; *Smith* v. *Pattie,* 81 Va. 664; and *Switzer* v. *Noffsinger,* 82 Va. 518.

*Seig, Adm'r* v. *Acord's Ex'r, supra,* was decided in 1871; but it was decided upon an appeal from a decree entered in 1855, upon a state of facts which arose prior to 1838,

and under the provisions of the Code of 1819; and no reference of any kind is made to the act of 1838 or the Code of 1849. The sole question in the case was this: Where one of two joint administrators has an account against his intestate, which was barred by the statute of limitations before the death of the intestate, could the bar of the debt be removed and the debt revived by the statement or admission of his coadministrator, made in 1852, that the account was correct? The court held that the statement or admission of the coadministrator did not amount to a promise to pay, and that "where there is a joint administrator, if the admission of one could bind the estate, which is, to say the least, problematical, * * * it seems to be well settled, that the acknowledgment by a personal representative, that the claim is just, does not imply a promise to pay, as it would if the acknowledgment had been made by the decedent himself; and, therefore, does not create a charge against the estate." While the question was not involved, in discussing the general subject, Judge Anderson in delivering the opinion of the court said:

"It has been a question whether the bar could be removed and the debt revived by the promise of a sole administrator, to pay an account against the intestate which was barred by the statute of limitations in his lifetime. We are of opinion that it could not."[21]   And later in the opinion he says as to this, "It is believed that no case can be found in Virginia where a different doctrine has been held." But, as has been noted, the court seems to have overlooked *Aylett's Ex'r* v. *Robinson,* 9 Leigh (36 Va.) 45.

In *Smith* v. *Pattie,* 81 Va. 654, the first question was whether there had been a promise by the administrator in his official capacity, and the second, whether an administra-

[21]In *Brown* v. *Rice,* 76 Va. 629, 659, *Seig, Adm'r* v. *Acord's Ex'r,* is cited as authority for the holding that a debt barred at the death of an intestate is "extinct and incapable of revival against his estate;" but why the court should have rested its discussion on this case instead of upon the statute is not apparent.

tor is bound to plead the statute where the heir has promised to pay a debt of the decedent which was barred. The court held that there had been no promise by the administrator, and in its discussion of the second question, after citing what are now section 5406 and section 5813, said:

"It is, therefore, clear that it is the duty of a personal representative, when sued at law, to plead the statute of limitations as to all claims which were barred at the time of action brought, * * *. Nor, where the debt was barred in the lifetime of the testator or intestate, can the personal representative make a promise which will take the case out of the statute, though he may, as in *Bishop* v. *Harrison*, 2 Leigh [29 Va.] 537, where the debt is known to be just, and is about to be barred, after the death of the testator, or intestate, make a promise to pay, which will prevent the operation of the statute."

In *Switzer* v. *Noffsinger*, 82 Va. 518, the question was whether a promise to pay made by the widow of a decedent revived the debt against the administrator. It was held it did not, but in concluding his opinion Judge Lewis remarked:

"It is not pretended that there was any promise by the administrator, before the debt was barred, whereby the operation of the statute was prevented, as, according to *Braxton* v. *Harrison*, 11 Gratt. [52 Va.] 30, 56, and other cases, it was competent for him to do. Nor is it denied that a demand once barred can not be revived by any acknowledgment thereof, as a charge against his decedent's estate, by a personal representative."

*Seig, Adm'r* v. *Acord's Ex'r* throws no light upon the view of the court as to the proper construction of section 5813. If the dicta in *Smith* v. *Pattie, supra,* and *Switzer* v. *Noffsinger, supra,* may be said to express the view entertained by the court as to the proper construction of section 5813, they were delivered without a critical examination of the subject. We find nothing in these cases which is determinative of the question here under consideration.

We come now to the contention of the plaintiff in error, that where proof of a claim against his decedent's estate which is not then barred is filed with him, and he thereupon promises to pay the claim, and thereafter makes part payment of it, he is estopped from pleading the statute of limitations and from relying on section 5813. To sustain this contention would be to nullify, in part, section 5813, or to make an exception thereto which the court is without authority to do.

So far as we have been able to find, filing of proof of claim with a personal representative has never been held to stop the running of the statute of limitations, except where there is a statute which provides that it shall have that effect. There are cases in which a promise to pay has been implied from what took place at the time the proof of claim was filed, but in view of section 5812 and section 5813 they can have no application to this case.

The plaintiff in error suggests that the administrator is estopped from pleading the statute of limitations because otherwise he would be permitted to perpetrate a fraud upon her. But the acts which she claims have the effect of working a fraud upon her are that he promised to pay her and then after the debt became barred pleaded the statute. But in view of the provisions of section 5813 and section 5406 fraud cannot be predicated upon these acts, for section 5813 declares that his promise shall not operate to take the case out of the statute of limitations, and section 5406 requires him to plead the statute wherever it is applicable. In *Whitehurst* v. *Dey,* 90 N. C. 542, it was held, in the absence of any statute similar to section 5813 or section 5406, that an executor's simple admission of the correctness of a claim against the estate and a verbal promise to pay it from the assets of the estate will not arrest the running of the statute of limitations, where there is no proof that the creditor refrained from suing at the request of the executor, or that the executor agreed not to plead the statute.

In this case there is no claim that there was any promise, express or implied, made by the administrator not to plead the statute, and section 5821, Code Va. 1919, relating to when such promises are enforceable, has no application.

*Affirmed.*

CHINN, J., concurred in the result.